364 So.2d 234 (1978)
FLEUR de LEIS APARTMENTS, Plaintiff-Appellee,
v.
DAVIDSON SASH AND DOOR COMPANY, INC., et al., Defendants-Appellants
No. 6640.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Rehearing Denied November 28, 1978.
Writ Refused January 19, 1979.
*235 Scofield, Bergstedt & Gerard by Robert L. Hackett, Lake Charles, for defendantsappellants.
J. Fred Patin, Lake Charles, for plaintiff-appellee.
Carl H. Hanchey of Jones, Patin, Harper, Tete & Hanchey, Lake Charles, for defendant-appellee.
Before WATSON, GUIDRY and FORET, JJ.
*236 WATSON, Judge.
The only remaining defendant in this lawsuit, Masonite Corporation, has appealed from a judgment in favor of the plaintiff partnership, Fleur de Leis Apartments, resulting from certain defects in hardboard siding manufactured by Masonite. The jury concluded that Masonite had breached both its implied warranty of fitness and a specific guarantee of its product. The $45,000 awarded was the cost of repainting the siding and amounts to a reduction in the price rather than redhibition. LSA-C.C. art. 2543.[1]
The issues are: (1) prescription; (2) manifest error; and (3) the effect on the jury of remarks by plaintiff's counsel, which are alleged to have been prejudicial.
PERTINENT TESTIMONY
The Fleur de Leis Apartments is a partnership in commendum between Paul Guillory and his three children with Guillory as the managing partner. Guillory acted as general contractor for construction of the 176 unit Fleur de Leis apartment complex. Nolan Conner was the subcontractor on a cost plus basis. Guillory stated that he began making complaints about the deterioration of the siding on the apartments within six months to a year after completion, although a problem with flaking paint was noted before that time. The apartments were completed around March 15, 1973. Guillory testified serious defects appeared in the siding between that date and March 15, 1974. After Guillory complained to Davidson Sash & Door Company, Inc., which had sold the siding, representatives of Masonite began arriving to observe the siding. Guillory said that he thought the product was guaranteed for 25 years and was not aware the guarantee only covered hail damage. In his opinion, excessive moisture in Lake Charles caused the problems with the siding; he thought the product was not suitable for this climate. Guillory testified that Bob Anderson of Masonite assured him that something was going to be done about his problem and Guillory had faith in Masonite.
The apartment complex is under the supervision of the U. S. Department of Housing and Urban Development (HUD). Guillory was advised by a HUD report dated February 25, 1976, that the masonite siding in the complex was fading.
Michael Nugent, a resident of the apartment complex from June of 1973 until June of 1976, testified that the appearance of the siding had deteriorated so much after his second year that he was ashamed to have guests. According to Nugent, they were still doing completion work on the north end of the complex in June of 1973.
Ebbe Mauritz Lundquist testified as an expert building inspector. He inspected the Fleur de Leis Apartments for HUD between January of 1974 and July of 1975 when he retired. His first report on the Fleur de Leis apartment project, dated April 4, 1974, made no special mention of the condition of the exterior siding, but his February 27, 1975, report noted fading color; Lundquist testified that the siding had also deteriorated at that time. The February report states in part:
"The masonite sidings are fading, this material is guaranteed for 25 years, recommend contact the Masonite Corporation, Chicago, Ill." (TR.207)
After making this report, Lundquist called the Masonite Corporation; a Bob Anderson with Masonite came to his office to discuss the Fleur de Leis project and said the problem would be taken care of by Masonite. Lundquist called Guillory; Anderson spoke to Guillory on the phone in Lundquist's presence and told him the same thing about correcting the problem. Lundquist understood Anderson to mean that Masonite would fix the siding to satisfy HUD and *237 Guillory. Lundquist thought there was a 25 year guarantee on the Masonite material, but, after he examined the siding in February of 1975, he and Guillory examined the 25 year guarantee and discovered that the small print limits it to hail damage; Lundquist said this was his first knowledge of the limitation.
Abel J. Walker, a contractor, worked as a construction examiner and representative for HUD from 1955 through 1972. Walker examined the Fleur de Leis apartments in June or July of 1972 while with the HUD office in New Orleans. At that time he noted nothing unusual about the masonite siding. In his opinion, the condition of the siding at the time of trial was the result of improper application of the factory finish or stain. Walker thought that the siding had a 25 year warranty and did not learn otherwise until the day of trial when he read the limitation which refers only to hail damage.
Nolan Conner testified that he built the Fleur de Leis, as well as fourteen other apartment complexes in Lake Charles, during more than 25 years in the construction business. Conner said a salesman from Masonite Corporation came to the job site and instructed his men about application of the siding. Conner did not read the installation instructions but went by what the salesman told him to do (TR.633). Conner thought the man's name might have been Gormley. According to Conner, David Van Netta of Davidson was also at the job site frequently and the FHA Inspector came weekly. Conner's daily job reports show David Van Netta, Harold Bachrack and Carl Conrad of Davidson as visitors to the site on February 25, 1972; and other representatives from Davidson on April 3rd, May 8th, June 15th; and June 29th. Conner testified that neither the FHA Inspector, the Masonite representative nor any one from Davidson ever said that the siding was being installed improperly. Conner had not worked with this particular material before or since.
Paula Hirsch, a daughter of Guillory and a member of the Fleur de Leis Apartments' partnership, testified that she participates in the partnership's management. Paula said the siding looked attractive initially, but, after a lot of rain in 1973, was beginning to look bad by the Spring of 1974.
Joyce McKeehan, another of Guillory's daughters and a partner in the Fleur de Leis, testified that she took an active part in supervising the construction. The choice of siding was made after David Van Netta of Davidson recommended a product by Masonite, which was represented as the newest and best thing which could be used. This siding was selected because it would not require repainting and had a 25 year guarantee.
David Van Netta, an employee of Davidson Louisiana, Inc., a successor company to Davidson Sash & Door Company, Inc., testified that he has worked for the company for 23 years. During 1972, he was branch manager in Lake Charles and sold the masonite siding in question to Paul Guillory. Van Netta testified that he did not represent that the product was maintenance free; or that it had an unlimited 25 year warranty. The sidings used, Woodsman and Bayside, were new in the Lake Charles area. Both were primed and prestained at the factory. Van Netta admitted being enthusiastic about the product; saying there was a 25 year guarantee; and omitting to mention that the guarantee was limited to hail damage (TR.783). Van Netta, as the result of complaints from Guillory, sent a letter to a Masonite Corporation representative, Jan Anderson, on November 6, 1974. Van Netta had had no complaints prior to November of 1974. After sending this letter, Van Netta contacted the district manager of Masonite, Jim Sheets, in Memphis asking what had been done on Van Netta's request for an inspection of the apartments.
Stuart Lynn Greenberg testified that, shortly after he became Davidson's Lake Charles manager in March of 1975, some Masonite representatives came to the City to look at the Fleur de Leis. One of them, John Grafton, is with the quality control division of Masonite. Greenberg subsequently received a letter from J. M. Sheets, regional manager of Masonite, in April of 1975 which states that:

*238 "Masonite does not guarantee the finish on its pre-stained sidings." (TR.202)
Greenberg sent a copy of this letter to Guillory by Connie Burleson. Guillory then told Greenberg that he had forwarded his copy of the letter to the HUD office in New Orleans, as Greenberg had advised. In 1976, Greenberg accompanied two representatives from Masonite, Bob Anderson and Paul Hill, to the apartment complex to take samples of the siding.
Paul E. Hill, an employee of Masonite, is general manager for Masonite's national account department. Hill testified that all masonite sidings are called X-90. X-90 Woodsman and Bayside sidings, those used on the Fleur de Leis, are available prestained. Colorlok is the only masonite siding that comes with a 15 year guarantee on the finish. Colorlok siding is more expensive than Woodsman and Bayside, because it has a baked on factory finish, but the substrate of the board is the same. Bayside was released for sale by Masonite in January of 1971 and Woodsman in January of 1972. The Woodsman siding shipped for the Fleur de Leis on April 14, 1972, was the first shipment of that product. The Fleur de Leis used 3300 panels: 2/3 Woodsman; 1/3 Bayside. Virtually all of the Woodsman siding sold by Masonite in 1972 went into that project. Hill was asked to obtain samples of the Fleur de Leis apartment siding by Mr. Demaree of Masonite's quality control department in September of 1976. Hill admitted that the color of the material had faded. Hill had first become aware of complaints about the Fleur de Leis siding in July of 1975 when he became regional manager in Memphis, Tennessee, replacing Jim Sheets.
Jack Wallace Brown, a contractor in Lake Charles, testified that he replaced some of the masonite siding on the Fleur de Leis apartments a few months before trial. According to Brown, some of the nailing was inadequate; the nails had missed the studs in some places. Brown noticed some fading of the siding, particularly in the areas exposed to weather.
Robert G. Anderson testified that he was employed in 1975 as a sales representative for Masonite in the New Orleans area. His immediate supervisor at the time, Jim Sheets, sent him a note on June 6, 1975, requesting that he explain Masonite's siding guarantees to the HUD office in New Orleans. Anderson then discussed Masonite's guarantees with Ebbe Lundquist of HUD on June 11, 1975. Anderson admitted that a telephone call was placed from Lundquist's office to Guillory in Lake Charles and Anderson also talked to Guillory. Anderson testified that he told Guillory he would contact whoever in the Masonite organization was responsible for the status of Guillory's claim and see that Guillory received some answer or communication about the situation. Anderson denied telling Guillory and Lundquist that he would take care of Guillory's problem.
Larry A. Demaree, a products' performance manager for Masonite, testified as an expert in wood and wood products. He gave a detailed narrative about the manufacturer of masonite siding. Demaree also testified about extensive tests done on samples of siding from the Fleur de Leis apartment complex. Demaree summarized his tests results as showing that: all of the panels met the product standards of Masonite; and there were no deficiencies in the siding. Demaree indicated that some of the siding panels were improperly applied but said the problem was not "gross" (TR.1277).
Oren N. Smith, Jr., a maintenance engineering technician for the management department of HUD, testified that he inspected FHA insured projects from a maintenance standpoint. He identified a physical inspection report of the Fleur de Leis complex made by him February 25, 1976, which required that exterior painting be done within one year.
Dr. Shelby F. Thames testified as an expert in the field of polymer science with a specialty in coatings. He was contacted by Masonite in December of 1976 to run tests on the siding. Samples of the Fleur de Leis siding were taken; he took half the samples and Demaree took half. Dr. Thames referred *239 to the stain or finish on the siding as a coating. The finish was an acrylic stain which he would expect to last in the Lake Charles area between one to three years, a minimum of one year and a maximum of three. In Thames' expert opinion, the stain on the Fleur de Leis complex was reacting just as he would have anticipated.
Russell L. Thibodeaux testified as an expert painting contractor that the Fleur de Leis complex could probably be repainted for $45,000.
PRESCRIPTION
The original defendant, Davidson Sash & Door Company, Inc., filed a peremptory exception of prescription, which was referred to the merits, as was a plea of prescription on behalf of Masonite. These exceptions were argued before the trial judge during the jury's deliberations and he concluded that the action had prescribed as to Davidson but not as to Masonite. The jury also concluded on the merits that Davidson was not liable. Separate judgments were rendered in favor of Davidson. Both the judge and the jury apparently concluded that Davidson was a seller in good faith and unaware of any vice in the siding. The judgments in favor of Davidson are not at issue in this appeal, except as they establish a lack of solidary liability between Davidson and Masonite.
Plaintiff's first petition, filed December 32, 1975, alleged that the siding had been purchased from Davidson during 1972 and was manufactured by Masonite Corporation but did not name Masonite as a defendant. In the absence of solidary liability, the filing of this suit did not interrupt prescription as to Masonite. Majesty v. Comet-Mercury-Ford Co. of Lorain, Mich., 296 So.2d 271 (La.1974); Compare Small v. Caterpillar Mfg. Corp., 319 So.2d 843 (La. App. 1 Cir. 1975). Subsequently, on April 21, 1976, Davidson filed a third party demand against Masonite. Masonite was then cited and served with the original petition of plaintiff and other pleadings as required by LSA-C.C.P. art. 1114[2]. Filing of the third party demand advised Masonite of the claim and its basis. LSA-R.S. 9:5801[3]. Allstate Ins. Co. v. Louisiana Gas Serv. Co., 344 So.2d 386 (La.App. 4 Cir. 1977); affirmed at 354 So.2d 503 (La.1978) points out that:
"When it has been established that the defendant has been judicially notified, so as to acquire sufficient knowledge of the rights which are sought to be enforced against him by a suit, there results a legal interruption in favor of those to whom the rights may belong." 344 So.2d 389.
A call in warranty, essentially what Davidson's third party demand against Masonite amounted to, is sufficient to interrupt prescription. Note the Official Revision Comments under LSA-C.C.P. art. 1111. South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 61, 83 So. 378 (1919): See 14 Tulane Law Review 601. A legal interruption of prescription occurred in favor of plaintiff, as well as Davidson, when the third party demand was filed. Fleur de Leis amended its original petition on September 9, 1977, to name Masonite as a defendant and allege a breach of its manufacturer's warranty.
*240 The prescriptive question is whether the demand against Masonite on April 21, 1976, was timely. The Davidson invoice on the siding was dated August 31, 1972, and this can be regarded as the approximate date of sale.
Masonite, as a manufacturer, is presumed to know of any vice in the thing made or constructed. Radalec, Incorporated v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955); Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La. 1974). The one year prescriptive period provided by LSA-C.C. art. 2534[4] does not commence to run in favor of a manufacturer until the defect is discovered by the buyer and/or all attempts at repair are abandoned by the seller. LSA-C.C. art. 2546[5]; Rey v. Cuccia, 298 So.2d 840 (La. 1974); Moreno's Inc. v. Lake Charles Catholic H. Schs., Inc., 315 So.2d 660 (La.1975); White v. Martin GMC Trucks, Inc., 359 So.2d 1094 (La.App. 3 Cir. 1978).
Here, as to Davidson, a seller in good faith, prescription began at the date of sale. Prescription in favor of the manufacturer, Masonite, presumed to be in bad faith, would run from discovery of the defect or defects by Fleur de Leis. The burden of proving when the buyer discovered the defect or defects rested with the manufacturer, Masonite.
There is a reasonable evidentiary basis for the jury to conclude that, while Guillory might have observed some defects in the siding within six months to a year of the project completion, other defects not apparent to resident Nugent or expert Lundquist as late as April of 1974 required correction as of February 27, 1975. Davidson's employee, Van Netta, testified that his first complaints about the siding came in November of 1974. Thereafter, in June of 1975, Anderson made representations, which were understood by Guillory and Lundquist to mean that Masonite would make good on the problem with the siding. Even if Anderson merely assured Guillory that he would receive some communication from Masonite, as Anderson testified, this was sufficient to lull Guillory into a false sense of security and interrupt prescription. Davidson's third party demand against Masonite on April 21, 1976, was a timely interruption of prescription.
MANIFEST ERROR
There is evidence from which the jury could reasonably have concluded that Guillory bought the siding in question because he believed it would not require maintenance or repainting. LSA-C.C. art. 2529[6]. Even if the siding was free of any vices or defects, as the Masonite experts testified, the jury could have found that Van Netta's representation that the siding had a 25 year guarantee was a principal motive for the purchase of the siding. Reiners v. Stran-Steel Corporation, 317 So.2d 657 (La.App. 3 Cir. 1975), writ denied, La., 320 So.2d 914. The jury apparently concluded that Guillory would not have purchased the siding had he known it would require repainting within a few years and this established a vice sufficient to warrant a reduction of the price. A misrepresentation by a seller that a thing sold has some quality which it does not possess is imputed to the manufacturer regardless of any express *241 or implied warranty to the contrary. Peoples Fur. & G. v. Carson Hicks/Friedrichs Ref., Inc., 326 So.2d 919 (La.App. 3 Cir. 1976); Radalec, Incorporated v. Automatic Firing Corp., supra; Moreno's Inc. v. Lake Charles Catholic H. Schs., Inc., supra.
PREJUDICE
Counsel for Masonite contends that various remarks by plaintiff's counsel during the trial improperly influenced the jury. While counsel for plaintiff was unduly argumentative with some of the witnesses, his remarks were not so prejudicial as to deprive Masonite Corporation of a fair trial. Even if he did improperly influence the jury, our independent review of the facts supports the jury's verdict. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La. 1976).
For the foregoing reasons the judgment of the trial court herein is affirmed. All costs of this appeal are assessed to defendant-appellant, Masonite Corporation.
AFFIRMED.
GUIDRY, J., dissents and assigns written reasons.
GUIDRY, Judge, dissenting.
Although I respect the views of my esteemed brethren of the majority, I am unable to agree to an affirmation in this case because, in my opinion, the record clearly reflects that plaintiff's cause of action for redhibition and/or violation of an express warranty prescribed long prior to the institution of suit against Masonite.
It appears to be well settled that the prescription of one year applies both to actions in redhibition and actions based upon the violation of an express warranty. See 42 T.L.R. 374 and cases cited in Fusilier v. Ardoin, 266 So.2d 531 (La.App. 3rd Cir. 1972). It is equally well settled that a manufacturer is presumed to know of the defect in its product and thus is presumed to be in bad faith. A redhibitory action and/or an action for violation of express warranty against one in bad faith must be instituted within one year of the buyer's discovery of the defect, although this prescription is interrupted by the seller's and/or manufacturer's attempts at repair, prescription under the latter circumstances running anew from the date on which attempts to cure or remedy the defect are abandoned. White v. Martin GMC Trucks, Inc., 359 So.2d 1094 (La.App. 3rd Cir. 1978). Finally, I observe that it is generally held that "whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription". Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970).
Considering these general rules I am of the opinion that the entire record, including the testimony of Paul Guillory, managing partner of plaintiff, clearly shows that prescription on any claim in redhibition or for violation of an alleged express warranty as to quality accrued long prior to the institution of suit against Davidson and certainly prior to the filing of Davidson's 3rd party demand against Masonite.
The record shows that the siding was completely installed by the fall of 1972 (Tr. pg. 419). The invoice from Davidson for all siding furnished is dated August 31, 1972 and as the majority states this can be regarded as the approximate date of sale. Guillory testified that he noticed deterioration of the siding "long before the buildings were complete". The following testimony of Guillory (see page 441 et seq. of transcript) is I believe significant with regard to his knowledge that the siding was defective and the date on which he acquired this knowledge.
"Q. So when was the first siding put up, approximately?
A. Well I'd say the summer of '72.
Q. So by the end of 1972, you noticed you had a problem?
A. Yes sir.
Q. And you stated that you complained to Mr. Davidson at that time?

*242 A. Mr. Van Netta[*]

Q. To Mr. Van Netta[*] at that time.

A. Yes.
Q. So you would estimate by the end of 1972 you were complaining?
A. Yes sir.
Q. You thought you had a problem?
A. I thought I had a problem, yes.
Q. And you thought you had some defective siding?
A. Sure did."
The record leaves no doubt but that neither Masonite nor Davidson ever made any attempt to repair or remedy the defect complained of. In this regard Mr. Guillory testified as follows: (Tr. page 421)
"Q. I believe you stated yesterday that Masonite made no effort whatever to make any repairs on the siding?
A. No sir.
Q. Am I correct they made no effort whatever?
A. You're correct.
Q. Did Davidson ever make any effort to repair your siding?
A. No sir.
Q. Did Davidson ever indicate to you that Davidson was going to do anything about your siding?
A. No sir."
Finally, it is clearly shown by the record that the first notice of any kind that Masonite had with regard to plaintiff's complaints came by way of a letter from the seller dated November 6, 1974, over two years following completion of the sale; installation of all siding; and, discovery of defects by Guillory sufficient to evoke complaints from him. Considering the above it appears to me that plaintiff's claim in redhibition and/or violation of express warranty of fitness has prescribed.
The majority finds otherwise, as did the trial judge, concluding that although defects were noted as early as late 1972 such defects did not reach redhibitory dimensions until much later. I cannot agree with this conclusion. A defect in a product sold may be said to be of a character warranting redhibition, when such defect renders the thing sold either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSA-C.C. Article 2520. Certainly, it must be said that a defect is of a character warranting redhibition if it is of such severity and causes such inconvenience as to evoke complaints from the buyer and requests that the seller remedy the defect. Under such circumstances, in my view, when the complaints fall on deaf ears and the seller and/or manufacturer undertakes no repairs and promises none, the buyer must be held to know that the defects are of redhibitory dimensions. Cf. Woodward-Wright & Co., Ltd. v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719 (1909). In the instant case plaintiff's managing partner candidly admits that as early as late 1972 he knew he had purchased some defective siding; he complained about the defects; but, the seller made no effort to repair the siding and never indicated to the buyer that it would do anything about the siding. Under such circumstances I would conclude that the buyer must be held to have had knowledge of the defect at that time and that such defect was of a character warranting redhibition. To hold otherwise is to ignore the general legal principle that whatever is notice enough to excite attention and put the owner on his guard is tantamount to knowledge or notice of every thing to which inquiry may lead and is sufficient to start the running of prescription. Under the circumstances of this case I would conclude that plaintiff's cause of action against Masonite has clearly prescribed under the provisions of LSA-C.C. Article 2546. Since in my view the plea of prescription is well founded I would not reach the other issues raised by appellant and express no opinion with regard to the disposition of these issues by my brethren of the majority.
For the above and foregoing reasons I respectfully dissent.
NOTES
[1] LSA-C.C. art. 2543:

"The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
But in a redhibitory suit, the judge may decree merely a reduction of the price."
[2] LSA-C.C.P. art. 1114.

"A citation and a certified copy of the third party petition shall be served on the third party defendant in the manner prescribed by Articles 1231 through 1293. Unless previously served on or filed by the third party defendant, certified copies of the following pleadings shall also be served on him in the same manner: the petition in the principal demand; the petition in the reconventional demand, if any; and the answers to the principal and reconventional demands filed prior to the issuance of citation in the third party action."
[3] LSA-R.S. 9:5801.

"All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants, including minors or interdicts, by the commencement of a civil action in a court of competent jurisdiction and in the proper venue. When the pleading presenting the judicial demand is filed in an incompetent court, or in a improper venue, prescription is interrupted as to the defendant served by the service of process."
[4] LSA-C.C. art. 2534:

"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence."
[5] LSA-C.C. art. 2546:

"In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
This discovery is not to be presumed; it must be proved by the seller."
[6] LSA-C.C. art. 2529:

"A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to redhibition, if this quality was the principal motive for making the purchase."
[*] Van Netta was the district manager of Davidson in 1972.