368 So.2d 747 (1979)
Curtis ROBERTSON, Plaintiff-Appellant,
v.
JIMMY WALKER CHRYSLER-PLYMOUTH, INC. & Chrysler Corporation, Defendants-Appellees.
No. 6842.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
Rehearings Denied March 29, 1979.
*749 Garrett & Ryland, Donald M. Garrett and Charles F. Nunnally, III, Alexandria, for plaintiff-appellant.
Gist, Methvin & Trimble, Lon P. Wilson, Alexandria, McGlinchy, Stafford, Mintz & Hoffman by William F. Bologna, New Orleans, for defendants-appellees.
Before DOMENGEAUX, FORET and STOKER, JJ.
Rehearings Denied March 29, 1979 for Curtis Robertson and Chrysler Corporation.
FORET, Judge.
This is a redhibition suit for return of purchase price of a 1974 Plymouth Trail Duster purchased by plaintiff from defendant, Jimmy Walker Chrysler-Plymouth, Inc. which was manufactured by the co-defendant, Chrysler Corporation. Jimmy Walker has also filed a third party demand against Chrysler Corporation for any amount it may be required to pay plaintiff. Defendants filed an exception of one-year prescription to the bringing of the action; this was referred to the merits.
After trial on the merits, the trial court held that the action had prescribed, finding that more than a year had elapsed since the defendant's last attempt to repair plaintiff's vehicle. Plaintiff appeals this judgment and also urges that he should prevail on the merits of his demand. Defendants, Jimmy Walker and Chrysler Corporation have answered, seeking to uphold the judgment of prescription, and, in the alternative, deny the merits of plaintiff's demand.[1]
Plaintiff, Curtis Robertson, purchased the Plymouth Trail Duster from Jimmy Walker Chrysler-Plymouth on June 11, 1974, paying a cash purchase price (including an earlier $500 deposit) of $5,040.00; he arranged private financing through Rapides Bank. Shortly after his taking possession of the vehicle, it suffered its first drive train problem. Over the next several months, he continued to experience various difficulties with the vehicle and brought it back several times to Jimmy Walker for repair under the warranty agreement.
In January, 1975, he brought it in again to Jimmy Walker for repair of the four-wheel drive transfer case. Jimmy Walker kept the vehicle for some time, finally returning it to the plaintiff on March 3,1975. *750 Within a few days, the problem had reappeared, and plaintiff returned again to Jimmy Walker. There he was told that since the vehicle was now out of warranty, they could not do any more work on it without approval of a Chrysler factory representative. Thereafter, plaintiff engaged the services of an independent mechanic who, over a period of some months, attempted to repair the vehicle without lasting success. Finally, on March 12, 1976, plaintiff filed this suit for redhibition.

PRESCRIPTION
Defendants, Jimmy Walker and Chrysler, filed an exception of prescription alleging that more than one year had passed since Jimmy Walker had attempted to repair the vehicle. Louisiana Civil Code Article 2534[2] provides the prescriptive period applicable in a redhibition suit. However, this period has been held not to start running until the date the seller abandons his attempts to repair the defect. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975); White v. Martin GMC Trucks, Inc., 359 So.2d 1094 (La. App. 3 Cir. 1978); Franklin v. American Motors Corporation, 344 So.2d 1130 (La. App. 3 Cir. 1977).
Additionally, ". . . prescriptive statutes are strictly construed, and the facts of the case must bring the action clearly within the specific provisions of the law sought to be applied." United Carbon Co. v. Mississippi River Fuel Corp., 230 La. 709, 89 So.2d 209 (1956).
Plaintiff's uncontradicted testimony is that, in effect, he was told that further repairs had to await the factory "rep's" authorization, not that they wouldn't be done. Mr. Robertson's testimony was as follows:
"Q. All right. Do you recall when you notified Jimmie Walker Chrysler-Plymouth of this subsequent trouble?
A. Oh, I'd say it was less than a week, after I'd got it out of the shop. I don't recall the exact date. It was about . . . after March . . . . No, it was probably around March the . . . I got it out March the 3rd, I think. And . . . it was four (4) or five (5) days after that.
Q. Okay. Did . . . . Who did you talk to at Jimmie Walker Chrysler-Plymouth?
A. Leslie Harville.[[3]]
Q. What did Mr. Harville tell you. . . .
A. Well, he'd (Interrupted)
Q. About (Interrupted)
A. Have to have a factory representative to look at it. And said it was out of warranty. And that they couldn't do any more work on it unless they had the factory representative's authority.
Q. Okay. Now, did you go back to Jimmie Walker Chrysler-Plymouth on any particular other date in March, concerning something to be placed on the vehicle?
A. Yes, I went back . . . probably, two (2) weeks later to find out if the factory representative had come in. And . . . which he hadn't, they said. And they had my tailgate lock for something and I got it put on.
Q. Okay. The time that your tailgate lock was put on, did they tell you that they would not fix the vehicle?
A. No, they did not. The factory `rep' hadn't come in yet, at that time. 
. . . . . .

*751 Q. Did anyone from Jimmie Walker Chrysler-Plymouth tell you that they would not fix . . . . Did anyone at Jimmie Walker Chrysler-Plymouth notify you concerning your vehicle?
A. No, they did not. Leslie Harville told me that he would . . . call me when the factory representative came in. And so I waited nearly two (2) months and he never did call. So I went in one day and he said . . . . Asked him if the factory representative had come in? And he said, yes, but that he told me that we're not going to fix your car, so it wouldn't do any good for him to call you. And then, I just asked him why didn't they give me the courtesy to let the man call me and tell me hisself.
Q. Do you recall this time? Was it. . . . What month? What day of the month? Do you recall when they told you this?
A. It was, probably . . . some time early June." (Tr., pgs. 184-186)
This differs from the situation in Franklin, supra, where the plaintiff was not led to believe repairs would be made but merely continued to telephone the defendant automobile manufacturer requesting assistance. In this case, Robertson was led to believe that at the very least, Jimmy Walker or the Chrysler factory "rep" would contact him.
The facts of this case are also similar to those present in our recently decided Fleur de Leis Apartments v. Davidson Sash and Door Company, Inc., 364 So.2d 234 (La.App. 3 Cir. 1978). There the court found that various representations made by the defendant manufacturer's representative were understood by the plaintiff to mean that his problem would be at least inquired into, and that he would receive some further communication. This was sufficient to lull the plaintiff into a false sense of security and interrupt prescription. In the present case, we find that prescription did not begin to run on the plaintiff's cause of action until he was definitely told that no more work would be done on his vehicle (June, 1975) and that this suit filed on March 12, 1976, was timely instituted.
On appeal, Chrysler argues that representations made by Jimmy Walker do not extend the prescriptive period as to it. Chrysler furnishes no law or jurisprudence in support of this contention and we do not find any. Further, the record indicates that Chrysler and Jimmy Walker were inseparably involved in attempts to correct the alleged defects. The plea of prescription is overruled as to both Jimmy Walker and Chrysler.

MERITS
As noted above, plaintiff, Curtis Robertson, purchased the Plymouth Trail Duster from Jimmy Walker on June 11, 1974, paying a cash purchase price (including an earlier $500 deposit) of $5,040.00; he arranged private financing through Rapides Bank. Almost immediately he began experiencing problems with the vehicle. On July 10, he brought it back to Jimmy Walker, complaining of a noise in the rear end. Jimmy Walker and a Chrysler factory representative initially thought that there was a wrong lubricant in the differential or a defective brake. Eventually, it was determined that it was neither of these and the rear end was replaced. Approximately one month later while using the vehicle off road, the four wheel drive transfer case became stuck in the "low-lock" position. In order to get back to Alexandria, he contacted a mechanic friend who advised him to remove the front drive shaft as the vehicle could not be driven on the highway while in "low-lock" (apparently the rear differential overheated when he attempted to do so). He took it back to Jimmy Walker the next day and while the transfer case was being repaired, a front wheel bearing was also found to be broken (or perhaps was broken by a Jimmy Walker mechanic during the repair process). As Jimmy Walker had no replacement front bearings in stock, plaintiff was forced to leave the vehicle at the dealership for some four to six weeks until *752 a new bearing came in. Approximately two weeks after putting the replacement bearing in, it began making noise and the vehicle was again returned to Jimmy Walker. There it was found that the bearing was dry and it was again replaced.
The next trouble the plaintiff experienced with the vehicle occurred in the fall of 1974 when the chain in the four wheel drive transfer case began slipping. He brought the vehicle back to Jimmy Walker who told him that it would take some time to locate the problem and repair it. He was told that he could go ahead and use the vehicle during that hunting season and bring it back to the dealer when hunting season was over to be repaired. He returned the Trail Duster to Jimmy Walker in early January, 1975, and they kept it until March 3, 1975, when it was returned to the plaintiff. Within a few days, the problem in the transfer case and/or transmission had reappeared, and he returned to Jimmy Walker. There he was told since it was now out of warranty they could not do any more work on it without approval of a Chrysler factory representative. As noted hereinabove in our discussion on prescription, plaintiff was led to believe that further repairs would be made to the vehicle as soon as the factory "rep" authorized it.
When finally informed in the summer of 1975 that no further repairs would be made by Jimmy Walker because the factory "rep" would not authorize same, plaintiff took the vehicle to an independent mechanic, Clyde Kelly, who attempted, over the next year, to repair the transfer case and transmission. Despite the replacement of two rear-end differentials, two transfer case overhauls, numerous chain replacements and various other repairs, Kelly was unable to permanently eliminate the problems. Defendant, Chrysler, argues that Kelly was not properly trained to work on the relatively new type of constant four wheel drive transfer case installed on the Trail Duster and testimony by both Kelly and Chrysler's factory representative, Mr. Joe Knowles somewhat substantiates this. However, after refusal by Jimmy Walker to work again on the vehicle, plaintiff apparently took the logical course: to hire an independent mechanic with many years experience in Chrysler products. We do not find plaintiff at fault in doing this considering the attitude of Jimmy Walker and Chrysler. Edwards v. Port AMC/Jeep, Inc., 337 So.2d 276 (La.App. 2 Cir. 1976), writ refused.
Defendants argue that the condition of the vehicle and the problems experienced with it come from owner abuse. It must be noted here that the Trail Duster is a four wheel drive utility-recreation vehicle, similar to a Jeep or Chevrolet Blazer (which it more closely resembles). Mr. Robertson is an independent building contractor and developer, as well as a sportsman, and testified that he specifically purchased this vehicle to use on and off the road for use in both business and pleasure. Prior to the purchase of the Trail Duster, he had owned another four wheel drive vehicle, an International Scout. The Trail Duster was a newly introduced vehicle at this time and in fact was the first one that Jimmy Walker had sold or worked on. One special feature, discussed elsewhere in this opinion, was a constant four wheel drive system whereby the vehicle operates in the four wheel drive mode at all times and it is not possible to "lock out" the drive to the front wheels as is possible with some other four wheel drive vehicles. Additionally, the four wheel drive system provides a "lock" mode to be used in rough, off road travel when there may not be optimum traction. There is a "low lock" position for extremely rough traveling such as in mud at low speeds and a "high lock" for somewhat faster travel in less rough terrain. These lock modes are controlled by shift lever inside the vehicle.
In determining what constitutes owner abuse, we must look to the nature of the vehicle. The Trail Duster was a four wheel drive vehicle advertised and sold for use on and off the road; what may be abuse to an ordinary passenger automobile is what this vehicle is supposed to thrive on. Plaintiff specifically ordered his Trail Duster from Jimmy Walker after consultation with a *753 salesman; Jimmy Walker thus had knowledge of the use to which plaintiff intended to put the vehicle. Plaintiff stated that he used the vehicle to go hunting and fishing as well as to travel to job sites on unimproved roads; this is the type of use such vehicles are customarily purchased for.
Defendants allege that the vehicle was stuck in mud; plaintiff does not deny this. In order to minimize these situations, he installed an electric winch on the front of the vehicle to pull it out of such trouble. Various minor body damage is likewise expected when used in rough terrain.
Defendants allege that plaintiff installed different sized tires on the rear and in the front of the vehicle which all mechanical evidence shows would cause drive train problems. Plaintiff denies this and none of Jimmy Walker's employees could testify that they ever saw the vehicle so equipped while in the dealership for repairs. Plaintiff did place larger tires on the vehicle necessitating some minor cutting of the body for them to fit (both front and rear from the photographs introduced into evidence). Again, whereas this might constitute abuse on an ordinary passenger automobile destined for use on paved roads, this is common practice among owners of four wheel drive vehicles in order to add ground clearance and traction. Chrysler does not allege that larger tires on all four wheels would have caused mechanical harm to the drive train.
Every vehicle has its capabilities beyond which use constitutes abuse. This four wheel drive vehicle is advertised and sold for its on-and-off-road qualities; plaintiff specifically purchased it for hunting and fishing as well as for his business. Considering the nature of the vehicle, we find no owner abuse in the present case.
Finding no owner abuse, we hold that the plaintiff would not have purchased this vehicle if he had known of the problems in the drive train, and is thus entitled to dissolution of the sale.
Chrysler Corporation has raised two defenses relative to Jimmy Walker's third party demand against Chrysler. First, Chrysler contends that the dealer agreement provides that the law of Michigan shall apply, and secondly, that Jimmy Walker waived its redhibitory warranty in the dealer agreement which was entered into between Chrysler and Jimmy Walker.
As to Chrysler's contention that the law of Michigan applies, we find no merit therein. Chrysler has not introduced or demonstrated just what the law of Michigan actually is in respect to the issues in this case. The cases are legion that unless the law of a sister state upon which a party relies is placed in evidence, then it is presumed that such law is the same as that of Louisiana. Jagers v. Royal Indemnity Co., 251 So.2d 806 (La.App. 3 Cir. 1972), writ issued, 260 So.2d 315, 261 La. 524, affirmed 276 So.2d 309; Morrison v. New Hampshire Insurance Co., 187 So.2d 729, 249 La. 546; Johnson v. McCorvey, 344 So.2d 448 (La. App. 2 Cir. 1977).
As to Chrysler's second contention, that is, that Jimmy Walker has waived its redhibitory warranty in the dealer agreement so that it could not recover in indemnity, its damages as a result of a defectively manufactured automobile, we observe Louisiana Civil Code Article 2531, as amended in 1974, in pertinent part:
". . .
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish, or prevent such recoupment by the seller shall not be given any force or effect."
The 1974 amendment to Article 2531 was adopted subsequent to the dealer agreement between Chrysler and Jimmy Walker. The provision of the direct dealer agreement which Chrysler relies on provides as follows:

*754 "Chrysler Corporation's warranty on new Chrysler passenger cars, as in effect from time to time, will be as set forth in Chrysler's warranty and policy procedure manual. Chrysler will supply sufficient copies of Chrysler Corporation's then current warranty to direct dealer to permit direct dealer, in accordance with direct dealer's obligations under paragraph 7 of this agreement, to provide a copy to each purchaser from direct dealer of a new Chrysler passenger car. Such warranty will be the only warranty made or deemed to have been made to any person by either Chrysler or Chrysler Corporation applicable to products sold under this agreement, it will be expressly in lieu of any other warranty, express or implied, including but not limited to any implied warranty of merchantability or fitness for a particular purpose; and any remedies set forth in such warranty will be the only remedies available to any person with respect to products sold hereunder. Neither Chrysler nor Chrysler Corporation assumes or authorizes any other person to assume for either of them any other obligation or liability in regard to such products."
We find Chrysler's position in this matter to be untenable. Louisiana Civil Code Article 2531 specifically provides that the seller is entitled to recoup its losses from the manufacturer regardless of any contrary provision, in any franchise or manufacturer-seller contract or agreement. In addition, the direct dealer agreement states that the warranty is the one that is in effect from "time to time" and as set forth in Chrysler's warranty and policy procedural manual. In our opinion, this is not a sufficient waiver of warranty against redhibitory defects, and in addition, there has not been sufficient proof of what warranty was in effect under the direct dealer agreement on the issue involved in this lawsuit, and whether or not this warranty is changed from time to time. There can be no effective waiver of the warranty against redhibitory defects by the substitution of another unspecified warranty that may change from time to time. Since there has not been sufficient proof of what warranty was referred to in the direct dealer agreement, it would be presumed to be the same warranty as provided by Louisiana law. Accordingly, we hold that Jimmy Walker is entitled to be indemnified for any and all damages which it may have sustained as a result of the defectively manufactured Trail Duster which Jimmy Walker sold to the plaintiff herein.
Having determined that plaintiff is entitled to a dissolution of the sale, we now address ourselves to a consideration of damages, attorney fees, etc. During the period of time that plaintiff operated the vehicle, he logged a total of 44,000 miles in the vehicle before he permanently abandoned his attempts to repair it. Obviously plaintiff had extensive use of the vehicle up until that time. Accordingly, we are of the opinion that $.08 per mile for the 44,000 miles would be proper credit to be allowed against the purchase price of the vehicle. In computing the amount of recovery to which plaintiff is entitled, we show the following:

 Cost of vehicle $ 5,040.00
 Sales tax 216.00
 License & title 11.50
 Finance charges 716.79
 __________
 Total cost $ 5,984.29
 Cost of repairs incurred by plaintiff
 after Jimmy Walker and Chrysler
 refused further work $ 1,305.53
 __________
 Total $ 7,289.82
 From this total, we subtract $.08
 per mile credit due to the defendants
 for 44,000 miles worth of use $ 3,520.00
 __________
 Total $ 3,769.82

In this amount, we cast judgment in solido against Jimmy Walker and Chrysler, but for which we grant judgment to Jimmy Walker for that amount for its third party demand against Chrysler. See Porche v. Robinson Bros., Inc., 349 So.2d 975 (La.App. 1 Cir. 1977); La. Civil Code Article 2545; Rey v. Cuccia, 298 So.2d 840 (La.1974); Gonzales v. Southwest Mobile Homes, Inc., 309 So.2d 780 (La.App. 3 Cir. 1975), writ refused 313 So.2d 239 (La.1975).
*755 Plaintiff has requested damages for mental anguish and inconvenience alleging that the principal purpose of his purchase of the vehicle was his "avid interest and intellectual enjoyment of the outdoor activities" (pi's, brief, pg. 19, i. e. hunting & fishing). Despite this attempt to distinguish his present situation from that present in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), we feel constrained by the language of the Louisiana Supreme Court in that leading decision. (See also Laughlin v. Fiat Distributors, Inc., 368 So.2d 742 (La.App. 3 Cir. 1979)).
In that case, the Louisiana Supreme Court refused to award damages for aggravation, distress, and inconvenience under Louisiana Civil Code Article 1934 in a situation involving breach of contract of repair of an automobile, reasoning that the object of such contract was not primarily or exclusively the intellectual gratification of the aggrieved party:
"The principal object of the contract, the overriding concern of plaintiff, evident to defendant at the time the contract was entered into, was the repair of plaintiff's automobile with its consequent utility or physical gratification." Meador, at page 437.
In Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1 Cir. 1977), our brothers of the First Circuit, following Meador, held that claims for mental anguish and inconvenience are not compensable in an action in redhibition. While the vehicle in the present case is not an ordinary passenger automobile, the object of the contract of purchase of it is not sufficiently different. While it may have been purchased with the idea of using it for recreational activities, we do not believe that the evidence at trial has shown that this was the principal or exclusive reason for its purchase. Agreeing with our appellate brethren and being bound by the majority opinion in Meador, we are unable to grant the prayed for damages.
Plaintiff has requested attorney fees as damages at both trial and appellate level, and we award him the amount of $3,500.00 attorney fees against Chrysler Corporation. Jimmy Walker, by third party demand, has requested and we grant judgment over against Chrysler for any amount for which it becomes indebted to plaintiff, which we have determined to be $3,769.82 (as above mentioned), as well as its own attorney fees which it has incurred in the defense of plaintiff's suit. We feel that an award of $2,000.00 to Jimmy Walker for attorney's fees would not be inappropriate. See Porche v. Robinson Bros., supra; Gonzales v. Southwest Mobile Homes, Inc., supra.
In accordance with the above, we grant judgment in favor of plaintiff, Curtis Robertson, against Jimmy Walker Chrysler-Plymouth, Inc. and Chrysler Corporation, in solido, in the amount of $3,769.82, plus legal interest thereon from date of judicial demand; we grant judgment in favor of plaintiff, Curtis Robertson, and against Chrysler Corporation for the amount of $3,500.00 as attorney fees, plus legal interest thereon from date of judicial demand. We further grant judgment in favor of Jimmy Walker Chrysler-Plymouth, Inc. and against Chrysler Corporation for the amount of $3,769.82 and for $2,000.00 attorney's fees, all with legal interest thereon from date of judicial demand.
All costs of these proceedings, at both trial level and appellate level, are assessed against defendant-appellee, Chrysler Corporation.
REVERSED AND RENDERED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
The majority opinion denies plaintiff's claim for damages resulting from his loss of use of his vehicle for the purpose of following his sporting interest in hunting and fishing. The denial is based on the case of Meadors v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976). I am not convinced that the Meadors case applies under the facts of this case. However, for another reason this item of claimed damages should *756 be denied. The reason is that the plaintiff failed to prove that his hunting and fishing activities were curtailed. First of all, there is no proof in the record on this point. Second, it is clear that except for one episode, Mr. Robertson continued to operate the Trail Duster for over 44,000 miles and he admitted that he had driven it about 12,000 miles when he brought it in the last time to the dealer in January, 1975. In fact, plaintiff had brought the vehicle in during the Fall of 1974 and Jimmy Walker told him to keep it until the hunting season was over and then bring it in which is precisely what the plaintiff did. Third, plaintiff testified that he had other vehicles similar to this vehicle. Therefore, he presumably was not without means of transport for fishing and hunting trips.
For the foregoing reasons, I concur in the majority opinion.
NOTES
[1] Additionally, in the event of an adverse decision, Jimmy Walker has appealed its third party demand against Chrysler Corporation.
[2] Art. 2534. The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.

This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence.
[3] Mr. Harville was the service manager at Jimmy Walker. Neither he nor Jimmy Walker was called to testify at the trial.