YELVERTON, Judge.
This appeal arises from a suit for rescission of the sale of a truck. The plaintiff prevailed in the trial court and was granted rescission of the sale. Defendant appeals the trial court judgment granting rescission. Additionally, the defendant appeals the overruling of its exception of res judicata which was based on a compromise allegedly confected between defendant Chrysler and plaintiff prior to trial. We affirm both the trial court judgment in the redhibition suit and the overruling of the defendant’s exception of res judicata.
*445 RES JUDICATA
We will discuss the issue of res judicata first since our disposition of the redhibition issue depends upon our finding that no valid settlement was concluded by the parties. The history of the events from the sale until the alleged settlement is as follows.
On February 15, 1983, the plaintiff, George W. Ambrose, III, bought a new 1982 Dodge truck from M & M Dodge, Inc. in Alexandria, Louisiana. The purchase price was $14,997.05.
Plaintiff began having mechanical problems with the truck that March. He filed the original suit in May 1984 against M & M Dodge, Inc. and Chrysler Corporation seeking rescission of the sale. M & M Dodge answered the petition and filed a third-party demand for indemnification from the manufacturer, Chrysler.
In August 1984, counsel for plaintiff communicated a settlement proposal to counsel for Chrysler. A response by letter of December 28,1984, contained the following specific proposal by Chrysler:
Refund cash down payment $ 500.00
Refund net trade-in allowance 2,346.47
Refund payments on loan to Rapides Bank made through date of settlement (for purposes of this presentation, 22 payments at $216.79 each) 4,789.38
SUBTOTAL $7,615.85
Attorney fee to Jim Davis 1,000.00
SUBTOTAL $8,615.85
Less credit for miles driven estimated approximately 20,000 miles at ten cents per mile 2,000,00
NET PAYMENT TO AMBROSE & DAVIS $6,615.85
In the December 28th letter, Chrysler’s attorney specifically recited that Chrysler would agree to assume responsibility for the balance of plaintiff's bank loan at Rap-ides Bank, conditioned upon the plaintiff assigning to Chrysler his rights in the warranty protection plan, credit life insurance policy and accidental health insurance policy. Apparently it was contemplated at that point by counsel for both Ambrose and Chrysler that if rescission of the sale was agreed upon, Chrysler would take back the truck.
Subsequently, Chrysler informed its attorney that it did not want a return of the truck, but that it would be willing to pay the plaintiff an additional sum if he would agree to keep the truck. Chrysler’s attorney apparently communicated that offer to the secretary of plaintiff’s attorney by telephone. After speaking with the plaintiff, his attorney instructed the secretary to call Chrysler’s attorney and tell him that the plaintiff was willing to accept Chrysler’s proposal, which she did. There is no evidence in the record that Chrysler’s intention not to pay off plaintiff’s bank loan was communicated to plaintiff’s attorney or the attorney’s secretary.
Counsel for Chrysler then sent to plaintiff’s counsel a document entitled Receipt and Release along with two checks, one for plaintiff and one for his attorney. The substance of the settlement was that Chrysler would pay plaintiff $6,432 and his attorney $1,000 in return for full release from liability and dismissal of the pending suit. The settlement form contained no provision for Chrysler to pay off the plaintiff’s bank loan on the truck.
Plaintiff’s attorney admits that upon receipt he and plaintiff signed the checks and signed the settlement agreement without carefully reading the agreement. Immediately after signing, while the documents were still on his desk under his control, plaintiff’s attorney called counsel for Chrysler on the telephone, telling him that the documents were signed, and asked when Chrysler would pay off the bank loan. Counsel for Chrysler responded that paying off the bank loan was not part of the deal. Plaintiff’s attorney then announced that there was no deal and he physically cancelled his and his client’s names on the settlement agreement and the checks. The release was never returned to Chrysler’s attorney. The checks were never negotiated. Plaintiff has received no money from Chrysler.
Very soon thereafter, Chrysler filed an exception of res judicata. The exception was based on the fact that plaintiff’s counsel told Chrysler on the phone that plaintiff had executed the release. The exceptor *446 argued that the release was a transaction or compromise under Louisiana law which had the force and effect of a legal judgment between the parties to the compromise.
The trial court heard the exception and maintained it, refusing to allow plaintiff to introduce parole evidence of the negotiations of the parties for the purpose of attacking the terms of the written compromise agreement. In its written reasons for judgment, the trial court cited Davis v. Southern Farm Bureau Casualty Ins. Co., 324 So.2d 468 (La.App. 3rd Cir.1975), as the basis for finding a valid compromise between the parties and thus sustaining Chrysler’s exception.
Subsequently, the trial court set that judgment aside and issued a new judgment overruling Chrysler’s exception and finding in favor of plaintiff. In its written reasons, the trial court declared that it had erred in refusing to admit parole evidence of the negotiations between the parties. After considering the evidence, the trial court found that there was no meeting of the minds between the parties and that the agreement signed by the plaintiff and his attorney was signed in error. Chrysler appeals.the trial court’s judgment overruling its exception of res judicata and it argues that the trial court’s original ruling relying upon Davis should be reinstated.
In Davis, the plaintiff purported to settle a suit with Southern Farm arising out of an auto accident with its insured. The compromise document provided payment for a sum representing only his property damage, but contained a clause releasing Southern Farm and its insured from all claims including that for personal injury. Plaintiff signed the document without reading it carefully and apparently returned it to Southern Farm because he received the agreed upon payment from Southern Farm. Sometime after execution of the document, plaintiff realized that he had sustained serious personal injuries and he filed suit for those injuries and his medical expenses. The court held that the release was validly obtained and was binding upon plaintiff.
The Davis case is inapposite to the case at hand. It is clear from a reading of Davis that Southern Farm received the acceptance of the compromise and that the contract thereby became effective. Such is not the case here. The signatures were physically cancelled by plaintiff and his attorney and the document never left the attorney’s possession until it was introduced at trial. No contract was ever formed in the present case because there was never an acceptance of the offer to compromise.
Both sides to this contest treat the package consisting of the release and receipt, and the Chrysler checks, as an offer. An acceptance of an irrevocable offer is effective when received by the offeror. La. C.C. art. 1934. Chrysler argues that the acceptance of its offer became effective when Ambrose’s attorney told Nida (Chrysler’s attorney) on the telephone that he and Ambrose had signed the release and receipt, and that they had endorsed the checks. Chrysler argues that having signed the release and telling Chrysler that it was signed, Ambrose and his attorney accepted the offer and a binding contract was formed. The attempted retraction of the acceptance, though occurring in the same telephone conversation as the announcement that the papers had been signed, was, according to Chrysler’s argument, too late.
Chrysler’s argument is that the mere signing of the release formed a contract of compromise. We believe this is faulty reasoning. For one thing, if the execution of the instrument of release, by itself, could acquire such technical finality under the circumstances, it should also be noted that it was never executed because it was never notarized. It was prepared for notarial endorsement but it was not notarized, so it would seem to follow that the execution was not completed. We do not rest our decision on this reasoning, however, but simply on the ground that there was never an effective acceptance of the offer, because an acceptance was never received by Chrysler in the manner prescribed by law for the formation of contracts requiring a written acceptance.
*447 According to La. C.C. art. 1938, a written acceptance is received when it comes into the possession of the addressee or of a person authorized by him to receive it, or when it is deposited in a place the addressee has indicated is the place for this or similar communications to be deposited for him. The official comments to this article indicate that it adopts the “reception theory” of contract formation, rather than the “knowledge theory.” According to the “reception theory”, the acceptance of an offer takes place at the moment its communication reaches the offeror. 1 Litvinoff, Obligations 310 (1969).
There is no question in our case that the acceptance had to be in writing; an oral acceptance would not have formed a contract. La. C.C. art. 3071. For the acceptance to be effective, it had to be received, as defined by La. C.C. art. 1938, by the offeror. No written acceptance was ever received by Chrysler in our case. The mere fact that signatures had been affixed to the documents while in the possession of plaintiff is of no moment. These signatures were cancelled while the documents were still in the possession of plaintiff. There was never an effective acceptance of Chrysler’s offer; a contract of compromise was accordingly never formed. Defendant’s exception of res judicata was properly overruled.
REDHIBITION
Having considered the evidence, we find no error in the trial court judgment in favor of plaintiff granting rescission of the sale. The trial court has explained its reasons in a well-written discussion and we adopt those reasons and attach them as an appendix to this decision.
For the foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.
APPENDIX
CIVIL SUIT NUMBER 132,067 REASONS FOR JUDGMENT
Plaintiff seeks to rescind the sale of his 1982 Dodge Pickup Truck due to redhibi-tory defects and vices.
Mr. Ambrose purchased his vehicle on February 15, 1983. Beginning in March of 1983 plaintiff began to experience difficulties with the vehicle. His complaints relate mainly to problems with the transmission and clutch. A review of the repair orders show that the vehicle has been returned to the dealer for repairs on approximately ten (10) occasions between the dates of March 30,1983 and April 25,1984. At the present time the transmission is not operating properly in that there is a grinding when the vehicle is in third and fourth gears; a grease fitting is faulty; the radiator does not retain fluids at a proper level; and the air conditioner does not retain freon. There is no question that plaintiff has had numerous problems with this vehicle. M & M Dodge has attempted to correct the defects and in some instances have been successful. However, there is obviously a serious defect in the transmission despite the efforts of M & M Dodge to correct the problems.
In April of 1985 Firestone Tire Company replaced the universal joint in plaintiff’s vehicle. Plaintiff, himself, replaced the clutch cable which had broken while he was driving the vehicle.
The Court is of the opinion that the vehicle purchased by plaintiff was defective at the time of the purchase. Plaintiff had an abnormal and unreasonable number of repairs. There is no logical explanation for the problems which plaintiff experienced with the transmission and clutch other than a defect that existed at the time of the sale. The evidence is sufficient to support the plaintiff’s claim that the truck was unfit for its intended use and that he would not have bought it had he known of the defects. The evidence is clearly sufficient to warrant a rescission of the sale. Giselair v. Cajun Trucking, Inc., 421 So.2d 339 (La.App. 1 Cir.1982); LeFrance v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291 (La.App. 5 Cir.1985), writ denied, 467 So.2d 531 (La.1985).
Plaintiff is entitled to a return of the purchase price, finance charges and the *448 cost of credit life insurance together with attorney’s fees in the sum of $3,000.00.
M & M Dodge, Inc. is entitled to judgment on its third party demand against the Chrysler Corporation for any amount it is deemed liable and fees of its attorney in the amount of $2,000.00. LeFrance v. Abraham Lincoln Mercury, Inc., supra; Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186 (La.App. 3 Cir.1985).
Defendant is entitled to a credit for the. use made of the vehicle. At the time of the trial plaintiff had driven the vehicle 24,549 miles. The Court is of the opinion that $.12 per mile would be a proper credit. Robertson v. Jimmy Walker Chrysler-Plymouth, 368 So.2d 747, (La.App. 3 Cir.1979), writ denied, 371 So.2d 833, 834 (La.1979).
Judgment will be signed in accordance with the foregoing reasons. Defendant, Chrysler, is cast for all costs.
Alexandria, Louisiana, this 26 day of November, 1985.
/s/William P. Polk WILLIAM P. POLK District Judge