289 So.2d 841 (1973)
Terril A. CLARK
v.
McBRIDE DODGE, INC., and Chrysler Corporation.
No. 5552.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
On Rehearing February 6, 1974.
Milling, Saal, Benson, Woodward & Hillyer J. Broocks Greer, III, New Orleans, for defendant-appellant.
Michael A. Dessommes, New Orleans, for plaintiff-appellee.
Before REDMANN and SCHOTT, JJ., and BAILES, J. Pro Tem.
BAILES, Judge Pro Tem.
This is a redhibitory action.
Plaintiff, Terril A. Clark purchased a new 1970 two-door Challenger Trans-Am Dodge automobile from defendant, McBride Dodge, Inc., on April 8, 1970, which allegedly was defective.
Named defendants in this action were McBride Dodge, Inc., (McBride) and Chrysler Corporation, (Chrysler). McBride at the time of the commencement of this action was no longer Chrysler's dealer and is apparently a defunct corporation. *842 Although service was made on McBride, through its agent for service of process, it made no appearance herein and did not defend this action.
After trial, the district court awarded judgment in favor of plaintiff and against Chrysler and McBride, in solido, in the amount of $5,498.49, together with legal interest from date of judicial demand until paid and for all court costs. Chrysler suspensively appeals this judgment.
The plaintiff alleges that within three weeks after purchasing this Dodge Challenger it began to have mechanical trouble. The alleged defects consisted of carburetor trouble, electrical wiring problem, starter solenoid failure, and repeatedly had malfunctions of the transmission; that finally after being convinced that McBride could not adequately and properly correct the malfunctions of the transmission he returned the vehicle to McBride in December, 1970. Although McBride refused to accept the automobile, he left the vehicle at its place of business.
While Chrysler contends the contrary, the evidence produced at the trial convincingly proves that the automobile was defective.
Plaintiff returned his car to McBride on four separate occasions for repair of the transmission. On the last occasion he left the car with McBride for two weeks and upon receiving it as fixed, he drove it two miles when the defect recurred. He returned the automobile on that occasion, advised McBride's shop foreman that he was returning (tendering) the car to McBride.
There is convincing evidence that plaintiff did have trouble with the carburetors, the starter solenoid, the electrical wiring system, hard starting and excessive oil use, however, the most serious complaints are associated with the automatic transmission.
There is corroborating testimony to support the fact of actual complaints having been registered with the dealer protesting the operating condition of the vehicle.
The former shop foreman of McBride, whose testimony was presented by the defendant, acknowledged that plaintiff had brought his automobile back on two or three ooccasions before he finally abandoned the car to McBride. The number of times this witness recalled that plaintiff returned his car and the gravity of his complaints does not coincide with that testified to by plaintiff, however, we find this reasonable and understandable in considering the fact that this witness stated he handled from 30 to 40 cars a day for McBride during this period of time.
Also, the defendant offered the testimony of its Parts and Service Representative serving this region who testified he road tested the vehicle in question on April 16, 1971, after it had been acquired by the Chrysler Credit Corporation in foreclosure proceedings. He testified that he found the transmission operated normally.
There were lay witnesses who corroborated the testimony of plaintiff that he had had repeated difficulties with the transmission.
The plaintiff offered the testimony of Mr. Joseph LaFrance, a transmission specialist who was the owner and operator of an independent service facility which specialized in servicing automatic transmissions of all makes and models of cars.
This witness testified that he regularly attended service schools conducted by the automobile manufacturers and stays current with the latest developments of the industry.
Mr. LaFrance inspected and road tested the vehicle on the day of the trial. He diagnosed the problem with the automatic transmission as faulty installation, either at the time of the assembly of the vehicle at the factory, or subsequently. He testified that the engine would "wind up to about 30 mph before changing from the low range to the high range of operation; that for normal operation the transmission should go through the shift points and be in high *843 range at 28 to 30 mph." In his test of the vehicle, he stated he tried to get the car to shift but was unable. It was his opinion that the transmission, on accelerating, was "backing away" from the engine because of lack of proper installation and fixation to the engine.
Mr. LaFrance qualified as an expert in the field of automatic transmissions. He stated he was familiar with the Chrysler automatic transmission and that he did work for several New Orleans area Chrysler products dealers. He characterized plaintiff's car as a powerful high performance vehicle with a transmission designed for the high performance engine of a Dodge Challenger, built with bigger bands, clutches and drums. It was his opinion that the car had not been "hot-rodded" as the (original) tires did not indicate any abusive operation.
At the time the car was returned to McBride it had approximately 7300 miles on the odometer, and at the time of the trial and the date of inspection by Mr. LaFrance the odometer showed an attained mileage of 9000 miles.
On cross-examination, Mr. LaFrance was asked how he related the problem that he found in the car with the slipping of the bands to the original manufacturer. He stated that "Anything made by assembly or man is not perfect. This could very easily come from the factory like that."
The trial judge was convinced that the plaintiff had sustained the burden of proving that the automobile was defective.
The defendant, in its effort to overturn the judgment appealed, has assigned three specifications of error, this being:
1. In finding plaintiff's automobile to be defective and faulty;
2. In awarding plaintiff the return of the purchase price, plus finance charges where the plaintiff no longer owned the automobile; and
3. In failing to allow a credit to defendant for use and depreciation of the automobile while in the possession of plaintiff.
The first specified error is a question of fact. The trial court found the automobile defective and faulty. From our appreciation of the testimony and evidence on which the trial court concluded the plaintiff had proved his case by a preponderance of the evidence we find no error. It is true that there exists a variance in the testimony of the defendant's expert witness (Mr. Barnes) and plaintiff's expert witness (Mr. LaFrance). The testimony of both of these experts was considered and evaluated by the trial court.
In Glenn v. Caire, 164 So.2d 656 (La. App. 3 Cir. 1964) a suit in redhibition to recover for an automobile air conditioning unit, the court stated:
"It is settled that in an action to set aside a sale on a plea of redhibition where complicated machinery is involved, it is not necessary for the buyer to seek out and prove the particular and underlying cause of the defect which makes the object sold unfit for its intended use. It is sufficient that he allege and prove that such a defect exists."
And in Ditta v. Polk Chevrolet, Inc., 196 So.2d 672 (La.App. 1 Cir. 1967) the court stated:
"In applying the above principles the courts of this state have held that a plaintiff need only prove that the thing purchased has failed to perform in the manner in which it was intended to perform, and that this failure was under conditions of normal use."
It is obvious that the trial court placed more weight on Mr. LaFrance's opinion than it did on that of Mr. Barnes.
We perceive no error in the conclusions of the trial court that the automobile was defective.
*844 LSA-C.C. Article 2520 provides as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
LSA-C.C. Article 2530 provides:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
In Media Pro. Consult., Inc. v. Mercedes-Benz of N. A., Inc., 262 La. 80, 262 So.2d 377 (1972), the Supreme Court said:
"Two warranty obligations are inherent in every sale, the warranty of merchantable title and the warranty of reasonable fitness for the product's intended use. LSA-C.C. Arts. 2475, 2476."
We find the vehicle plaintiff purchased from McBride was defective and that the defect made it reasonably unfit for the intended use of it by plaintiff, and accordingly the plaintiff is entitled to have the sale rescinded.
Defendant's second specification of error is directed to the trial court awarding plaintiff the return of the purchase price, plus finances, arguing that as the automobile was seized and sold in foreclosure proceedings the plaintiff was unable to return the object of the sale to defendant.
Defendant's position is that the return of the purchase price should be conditioned on plaintiff returning the vehicle to defendant.
The plaintiff returned the vehicle to McBride prior to foreclosure proceedings by Chrysler Credit Corporation. Obviously, plaintiff could not return the vehicle to both McBride and Chrysler. The plaintiff exercised the obvious choice in returning the car to McBride. Until it was seized by Chrysler Credit Corporation it was available to Chrysler.
As to the allowance of finance charges incurred by the plaintiff in the purchase of this vehicle as damages, we find no error. This was an expense of the sale which plaintiff was entitled to recover. See Cain v. Rapides Dodge, Inc., 207 So.2d 918 (La.App. 3d Cir. 1968), writ refused 252 La. 163, 210 So.2d 51 (1968), and Media Pro. Consult., Inc. v. Mercedes-Benz of N. A., Inc. et al., 264 So.2d 686 (La.App. 4 Cir. 1972).
The third specification of error is that the trial court failed to allow a credit to defendant for use and depreciation of the automobile while in the possession of plaintiff.
In Media Pro. Consult., Inc. v. Mercedes-Benz of N. A., Inc., et al., supra, the Supreme Court remanded the case to this court to fix the amount of the award to which plaintiff therein was entitled.
There on remand (264 So.2d 686) we stated:
"[2] Defendant contends that the allowance for depreciation should be given for two specific periods; the time periods reflective of depreciation of the vehicle include the time from sale of the car to the date of the trial, and the period of time passing since the trial. We are convinced that depreciation from the date of the trial to the present is not properly before this court since we are only concerned with the record and evidence contained therein that was appealed to this court. To remand on this basis would in effect grant defendant a new trial and, in our opinion, merely prolong the inevitable.

*845 "[3] Additionally, evidence relating to the depreciation of the automobile with respect to the period of time before trial could have been received and should have been offered at the original trial on the merits in the lower court. Moreover, considering the fact that the vehicle was faulty from its inception, we are of the opinion that allowance for any depreciation is untenable and therefore credit for same is denied.
"The judgment of the District Court in awarding damages was for the sum of $7,750.60, together with legal interest thereon from judicial demand against Cookie's Auto Sales, Inc. This sum represents the purchase price of the automobile, $6,572.36; finance charges of $1,163.24; and `official fees' of $15.00.
"We find no manifest error in the award of $7,750.60 as previously determined by the lower court. See Cain v. Rapides Dodge, Inc., 207 So.2d 918 (La.App. 3d Cir., 1968), writ refused 252 La. 163, 210 So.2d 51 (1968) which allows recovery for expenses occasioned by the sale.
"[4] As to this Court's finding of the amount of the award against MBDA, we reassert our original determination `that the portion of the lower court's judgment finding the vehicle to be so defective as to warrant the recision of the sale is manifestly correct and we affirm it accordingly', Media Production Consultants, Inc. v. Mercedes-Benz of No. Am., supra.
"Additionally, we note the following language utilized by the Supreme Court in the opinion which remanded this case:
`We hold therefore that Mercedes-Benz of North America, Inc., is solidarity liable with Cookie's Auto Sales, Inc. for the price of the automobile and other allowable expenses.'"
Also see: Prince v. Paretti Pontiac Company, Inc., La., 281 So.2d 112 (1973).
We find no evidence in this record to serve as a basis for the determination of depreciation of the automobile.
We find no error in the award of the trial court, and accordingly the judgment appealed is affirmed at appellant's cost.
Affirmed.
REDMANN, J., concurs with written reasons.
REDMANN, Judge (concurring).
I subscribe to the majority opinion except the discussion of allowance for use and depreciation.
I would reject, as completely unauthorized by C.C. art. 2531, any notion that a new car dealer or manufacturer should be allowed credit for depreciation (except in the sense of an equivalent of the value of the use the buyer enjoyed). The car could sit in the buyer's garage unused and still depreciate in market value.
The law is express that, on rescission for redhibition, the innocent seller owes the price plus "expenses occasioned by the sale * * * unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses". C.C. art. 2531. (The seller knowing the undisclosed vice is further liable for damages, art. 2545.) Only to the extent a buyer has enjoyed fruits of the defective thing is his recovery of the expenses occasioned by the sale diminished. In the ordinary case it seems fair to assign some rough estimate value (but not depreciation) to the use of a car as "fruits * * * drawn from it". But here the evidence of almost constant trouble, both severely inconveniencing the buyer and keeping the car out of use, supports the conclusion that the use of the car did not bring value to the buyer.

ON REHEARING
BAILES, Judge Pro Tem.
Inasmuch as the subject automobile was sold at sheriff's sale in the foreclosure *846 proceedings instituted by Chrysler Credit Corporation against the plaintiff for the sum of $1950, and the plaintiff received a credit therefor thus reducing his loss by that amount, it would be inequitable to the appellant for this court not to reduce the recovery to the plaintiff by that amount.
Accordingly, the judgment heretofore rendered in favor of plaintiff-appellee, Terril A. Clark, and against defendant-appellant, Chrysler Corporation, is reduced by the sum of $1950. In all other aspects, the judgment heretofore rendered is reinstated.
Amended, and as amended, affirmed.