SCHOTT, Judge.
Defendant, Winnebago Industries, Inc. has appealed from a judgment ordering rescission of the sale of a Winnebago Motor Home purchased by plaintiffs, Mr. and Mrs. Newton F. Marsh from defendant, Camper City of New Orleans, on July 14, 1972, for $13,026.50.[1] The issues are, 1) whether the claim was prescribed under LSA C.C. Art. 2534 by the time the suit was filed on July 22,1974; 2) if the theft of the vehicle while it was in the possession of Camper City constituted a fortuitous event such as to charge the loss to plaintiffs under C.C. Art. 2533; and 3) whether the evidence was sufficient to support the judgment ordering a rescission of the sale for redhibitory vices in the vehicle.
When they purchased the vehicle plaintiffs noticed that the curtains were soiled and were advised by Camper City’s salesman that they would be replaced. Just after the purchase plaintiffs took the vehicle on a trip to Waco, Texas. Before departing they discovered that a puddle of oil had leaked from the vehicle and they put in five quarts of oil. When the vehicle attained a speed of 50 miles an hour on the highway it made a loud humming noise from the rear leading them to take the vehicle to a dealer in Waco. He advised them that they could drive the vehicle back to New Orleans without causing additional damage to the vehicle. On the return trip from Waco plaintiffs drove through heavy rain and discovered that water was leaking into the vehicle. Upon their return to New Orleans they took the vehicle back to Camper City who in turn brought the vehicle to a local Dodge dealer to repair the rear end to eliminate the humming noise. Camper City made an attempt to repair the leaks but never succeeded and until the end of 1972 plaintiffs continued to return the vehicle to Camper City with complaints of leaking and other problems such as a defective refrigerator and a defective door lock. In the meantime Camper City lost its franchise with Winnebago as an authorized dealer, and in January, 1973, Camper City took the vehicle to an authorized Winnebago dealer in Patterson, Louisiana, where attempts continued to repair the leaks in the vehicle. Some time in 1973 the dealer in Patterson added a brace to the roof to prevent it from sagging and to correct the leaking and in the spring of 1973 Camper City was contacted by this dealer to retrieve the vehicle since there was some danger of flooding in the Patterson area at that time. On July 30, 1973, Camper City wrote a letter to plaintiffs asking them to pick up the motor home and advising them that all repairs had been made with the exception of a new set of curtains on order from Winnebago. Plaintiffs refused to accept the vehicle without the new curtains and they filed this suit on July 22, 1974. In December plaintiffs learned that the vehicle had been stolen from Camper City early in July, 1974.
The trial judge awarded plaintiffs their purchase price of $13,026.50, together with attorney fees in the amount of $2600.00. In his reasons for judgment he found that the leaky roof, engine hum, defective ring and pinion, oil leaks and refrigerator malfunction were sufficiently serious to make the vehicle unfit for the purpose for which it was intended so as to entitle plaintiffs to redhibition under C.C. Art. 2520. Attorney fees were assessed only against Winnebago as the manufacturer presumed to know the defects of the thing it manufactured pursuant to C.C. Art. 2545.
In this court Winnebago first contends that plaintiffs’ claim was prescribed by C.C. Art. 2534. While this article provides for a one-year prescription commencing from the date of the sale, where the seller has made continued attempts to repair the defects, prescription does not begin to run until the seller has abandoned all such attempts to repair. First National Bank of Ruston v. Miller, 329 So.2d 919 *672 (La.App. 2nd Cir. 1976), writs refused, 333 So.2d 243, de la Houssaye v. Star Chrysler, Inc., 284 So.2d 63 (La.App. 4th Cir. 1973), writs refused, 286 So.2d 662. The seller in this case did not abandon attempts to repair this vehicle until July 30, 1973, so that the filing of the suit on July 22 of the following year was timely. While plaintiff testified that he saw the vehicle at Camper City between the date of its return there from Patterson in the spring of 1973 and the date of Camper City’s letter, there was still work to be done on the vehicle and he was justified under these circumstances in refusing to accept it until all the work had been done. It is significant that even after the letter was written the curtains were still not replaced and exception to this item had been taken by plaintiffs from the very beginning.
Next, Winnebago attempts to minimize the defects in the vehicle and takes the position that individually and collectively they were not serious enough to render the vehicle “either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice,” as required for redhibition under C.C. Art. 2520. The record supports the trial judge’s conclusion that the defects were sufficient to entitle plaintiffs to the remedy of redhibition. The principal defect was the leaking roof which was revealed to plaintiffs a short time after they purchased it and which Camper City and the Patterson dealer attempted to correct for almost a year after the plaintiffs’ purchase. Not until the roof brace was installed was this defect presumably corrected in the spring of 1973 at a time when this corrective measure was also necessitated by the roof’s sagging. From the testimony of the Camper City representatives this was not an uncommon defect. The leaking alone would seem to justify redhibition under Baughman v. Quality Mobil Homes, Inc., 289 So.2d 376 (La.App. 1st Cir. 1973). But when this is considered along with the other defects which appeared in the vehicle and the long period of time during which plaintiffs were deprived of the use of their vehicle while attempts were being made to correct the defects, the conclusion follows that these plaintiffs would not have purchased this vehicle had they known of the vices and that the vehicle’s use was indeed inconvenient and imperfect under the circumstances so as to entitle plaintiffs to redhibition.
Next, Winnebago asserts that the theft of the vehicle in early July of 1974 was a fortuitous event so as to activate the provisions of C.C. Art. 2533:
“If it has perished by a fortuitous event, before the purchaser has instituted his redhibitory action, the loss must be borne by him.
But if it has perished, even by a fortuitous event, since the commencement of the suit, it is for the seller to bear the loss.”
Nixon v. Bozeman, 11 La.Ann. 750 (1856) disposes of Winnebago’s contention:
“.... Until the thing is shown to have perished, the presumption exists that it may yet be recovered; that there is still a property in the thing which may be divested by the rescission.... ”
There is no showing that the motor home has perished, only that it cannot be found by Winnebago and the Nixon presumption is that it may be recovered. It is significant that plaintiffs were not notified about this theft until December, 1974, long after they instituted this suit. We find no error in the trial court’s conclusion that the theft of the vehicle is not what the law considers a “fortuitous” event, and Winnebago’s contention in this regard was properly rejected.
Finally, Winnebago contends that plaintiffs are not entitled to attorney fees because there was no proof that the leak as a defect existed at the time of the sale. In support of this argument they cite C.C. Art. 2530 and Guillory v. Pitre Ford Company, 345 So.2d 1274 (La.App. 3rd Cir. 1977). In the cited case the court would not infer that the leak existed at the time of the sale since the leak first occurred five or six weeks after the sale during a hard rain. However, there was testimony in the case that *673 the leak was probably a break in one of the welds which occurred more than three days after the sale. In the instant case the leak was discovered just a few days after the sale when plaintiffs were returning from Waco, the curtains were soiled even before the vehicle was purchased by plaintiffs, and defendants offered no evidence to suggest that the leak was probably not in existence at the time of the sale. Thus, regardless of the presumption provided by C.C. Art. 2530 plaintiffs carried their burden of proof to show that the leak probably existed at the time of the sale. This showing entitles plaintiffs to attorney fees under C.C. Art. 2545 since Winnebago as a manufacturer is presumed to know of the defects of the thing it manufactures and therefore is deemed to be in bad faith under the Article. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. The judgment is in the form of a money judgment against Winnebago and the dealer Camper City for $13,026.50 with no requirement for return of the vehicle, but this is explained by the fact that the vehicle was stolen while in Camper City’s possession. Camper City did not appeal from the judgment.