400 So.2d 317 (1981)
Arne LEHN, Jr.
v.
CLEARVIEW DODGE SALES, INC., Chrysler Corporation and Chrysler Motors Corporation.
No. 11932.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
Rehearing Denied July 13, 1981.
*318 Corey, Reed, Bethay & Kogos, Edward J. Lassus, Jr., New Orleans, for plaintiff-appellee.
Edwin A. Stoutz, Jr., New Orleans, for defendant-appellant Clearview Dodge Sales, Inc.
Monroe & Lemann, Stephen B. Lemann, A. Justin Ourso, III, New Orleans, for defendant-appellee Champion Home Builders Co.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
GULOTTA, Judge.
This redhibitory suit by an owner of a new motor home is directed against Clearview Dodge Sales Inc. (dealer), Champion Home Builders Company (manufacturer of the body of the home), and Chrysler Corporation (manufacturer of the cab and chassis of the vehicle.) Defendants third partied each other and Clearview filed a reconventional demand against plaintiff for storing the vehicle after it was returned to the dealer.
Judgment was rendered in favor of Arne Lehn, Jr. and against Clearview and Champion, in solido, for $6,000.00 and for $1,000.00 in attorney's fees.[1] In written reasons, the trial judge stated:
"The Court is convinced from the testimony that when plaintiff purchased and took possession of his mobile home in June, 1977 it contained defects that rendered it unusable for the purpose intended.... Plaintiff is entitled to at least a reduction of purchase price and damages, but the primary question of whether he is entitled to rescission must be first resolved....
The Court concludes from the testimony that the vehicle was defective at the time of its manufacture, and that Champion is responsible and liable in this area to the plaintiff for damages. The Court further concludes that Clearview Dodge was dilatory in effecting any repairs that it could and should have made while the vehicle was in its control and thus delayed the vehicle being sent to Champion for the *319 ultimate repairs that were made. The Court feels that the plaintiff should be compensated by both the manufacturer and Clearview Dodge, in that both companies are equally responsible to plaintiff for his damages resulting in the loss of use of his vehicle, inconvenience and depreciation. The Court concludes that plaintiff should be compensated in the amount of $6,000.00."
Citing LSA-C.C. Art. 2531,[2] Clearview contends on appeal that as a good faith seller it is only bound to repair and can only be held liable for a reduction in the purchase price and expenses incidental to the sale. Accordingly, it argues that a vendor and a manufacturer cannot be held liable in solido for damages to the vendee. Clearview further contends that the second paragraph of LSA-C.C. Art. 2531 entitles it as seller to full indemnity from Champion for manufacturing defects. Clearview finally contends that non-pecuniary damages for inconvenience and loss of use are not recoverable in an action to rescind the sale of a motor vehicle and that it is entitled to credit for storage fees on its reconventional demand.
In answer to Clearview's appeal, Champion[3] contends that since Clearview did not make timely repairs to the Lehn vehicle and failed to cure the easily remedied defects or inform Champion of the problems until four months after Lehn returned his vehicle, Champion is entitled to indemnity and/or contribution from Clearview for payment of the judgment in favor of Lehn.

BACKGROUND
Plaintiff purchased his Dodge Tuffy motor home from Clearview for $15,700.02 on June 22, 1977. At the time of purchase, Lehn noticed that a door molding was out, that a roll-up shade did not function properly, and that there was a small stain on paneling in the bathroom. According to plaintiff, he returned the vehicle to Clearview twice for repairs during July, 1977 but the initial defects and other problems persisted.
Lehn experienced water leaks in the vehicle during rain on a trip to Mississippi in early September, 1977. In a letter of complaint to Clearview on September 7, he noted problems with rear window leaks, rearside door leaks, improper wheel alignment, improperly adjusted headlights, a weather stripping problem on the door, the initial window shade problem on the door, gasoline tank leaks, water pouring in during rain, fading bathroom paneling, a problem with the power steering, improperly working propane and gasoline gauges, and the absence of owner's manuals for the hot water heater and central heating system. Lehn returned the vehicle to Clearview on September 12.
Clifton G. Kitchens, Champion's service manager, testified that his company had a course of dealing whereby Clearview, upon receiving a customer complaint, called Champion for a parts request and authorization for repair on the unit. According to Kitchens, Clearview called Champion on several occasions from September through December, 1977 and obtained authorization *320 for repair or replacement of parts on Lehn's vehicle.[4]
After suit was filed in January, 1978, Champion picked up Lehn's vehicle from Clearview in mid-January and drove it to Champion's service center in Georgia. Based on Lehn's list of defects in his letter of September 7, Champion inspected the vehicle and completely repaired and reconditioned it for the purpose of tendering it back to Lehn and settling the litigation, even though it considered some of the complaints unfounded. Kitchens resealed the entire roof of the vehicle, replaced the entire propane tank and gauge, and installed new carpet and paneling. In his opinion, the windows and the doors of the vehicle did not leak, but he found that the refrigerator roof vent had not been properly sealed at the time of manufacture, resulting in water leakage down the interior wall of the vehicle.
Champion returned the motor home to Clearview in mid-February, 1978. According to Clearview's officials, they informed Lehn's attorney that the vehicle had been completely repaired. Lehn's attorney denied receiving any such call, however, and plaintiff stated that he did not talk to anyone at Clearview from September 12, 1977 until a deposition on April 4, 1979.

NATURE OF RECOVERY
The evidence clearly supports the trial judge's conclusion that the motor home contained defects rendering it unusable for the purpose intended. The more difficult issue, however, is whether the $6,000.00 judgment in favor of plaintiff should be viewed as "damages" or as a reduction of the purchase price.
Plaintiff's suit was to rescind the sale and recover damages for redhibitory defects. In a suit for redhibition the judge may decree a reduction of the price. LSA-C.C. Art. 2543. An action for reduction is subject to the same rules and limitations as the redhibitory action. LSA-C.C. Art. 2544.
In Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir. 1974), writ denied, 303 So.2d 186 (La.1974), we held that a trial judge, in estimating the amount of reduction in price, properly considers not only the cost of repairs but also "the numerous problems, the frequent inconvenience associated with breakdowns and repairs of these problems, and the overall poor performance in relation to that expected...." See also, Bendana v. Mossy Motors, Inc., 347 So.2d 946 (La.App. 4th Cir. 1977).
In his written reasons, the trial judge stated that plaintiff was entitled "at least to a reduction of purchase price and damages", but in compensating plaintiff in the amount of $6,000.00, the judge mentioned only "damages resulting in the loss of use of his vehicle, inconvenience and depreciation," and did not refer to a price reduction. We are of the opinion that despite the trial judge's use of the term "damages", the $6,000.00 award is in essence a reduction of the purchase price rather than a damage award. In light of the Menville case, supra, it appears that loss of use, inconvenience and depreciation are factors considered by a judge in estimating the amount of the reduction.
Accordingly, because we conclude plaintiff's judgment is in essence a reduction of the price, Clearview's reliance on Meador v. Toyota of Jefferson, 332 So.2d 433 (La.1976) in support of its argument that non-pecuniary *321 damages are not permissible in an action for a rescission of the sale of a motor vehicle has no application to our case.

SOLIDARY LIABILITY
We reject Clearview's argument that it should not be held solidarily liable with Champion. Since the award in Lehn's favor is in essence a reduction in the price rather than a damage award, Clearview can be held liable under LSA-C.C. Art. 2531, supra, for the reduction, even without a showing of bad faith under LSA-C.C. Art. 2545.[5] Dealers and manufacturers have been held solidarily liable for restitution of the purchase price and repayment of the buyer's expenses. Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972); Clark v. McBride Dodge, Inc., 289 So.2d 841 (La.App. 4th Cir. 1973). Similarly, judgment for a reduction in the purchase price of a motor vehicle has been rendered in solido against a manufacturer and a dealer for redhibitory defects. Huffman-Euro Motors v. Physical Therapy, Etc., 373 So.2d 565 (La.App. 3rd Cir. 1979).

INDEMNIFICATION
Both Clearview and Champion seek indemnification from each other.
By Act No. 673 of 1974, LSA-C.C. Art. 2531 was amended to afford a seller a right of action against the manufacturer of the thing for any loss sustained by the seller because of redhibitory defects in the thing sold. In Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4th Cir. 1978), we held, however, that a dealer "ought not recover loss caused by his own fault, at the expense of the manufacturer." We stated:
"It is common knowledge that, for whatever reason, new car buyers sometime experience considerable difficulty in getting minor complaints remedied by the dealer. The resulting determination by the buyer to demand redhibition might be the dealer's fault rather than the manufacturer's. If the dealer's failure to cure easily remediable defectsas he is presumably obliged towards the manufacturer to dois the basis of a redhibition, it would be unjust to make the manufacturer accept return of the now-used car and pay to the dealer not merely the wholesale price it received but, much worse, the retail price of the car, including the dealer's profit, plus attorney's fees. The dealer ought not to recover loss caused by his own fault, at the expense of the manufacturer."
In our case, the record supports the trial judge's conclusion that Clearview was "dilatory" in repairing Lehn's motor home despite his persistent complaints from the time of sale. Accepting Lehn's testimony, he returned the vehicle to Clearview for repairs twice before demanding rescission on September 12, 1977. The vehicle remained in Clearview's custody from September, 1977 through mid-January, 1978, when Champion took it back to Georgia for extensive repairs that were finally completed in February, 1978. Under these circumstances, even though the defects arose at the time of manufacture and are attributable to Champion, Clearview's tardiness in repairing the vehicle and notifying Lehn of the progress of the repairs precludes Clearview from receiving indemnification by Champion. We cannot say that the trial judge's conclusion that Clearview is "equally responsible" with the manufacturer for a reduction of the price is erroneous. Clearview is not entitled to indemnification.
By the same token, Clearview's failure to remedy the defects in the Lehn vehicle does not exonerate Champion from liability or entitle the manufacturer to indemnification by the dealer. Manufacturing defects and delays in repair by both the dealer and the manufacturer caused Lehn's problem. The failure by Clearview to notify *322 Champion of those problems or to repair them timely does not excuse Champion from responsibility for the defects, where Champion took a month to repair the vehicle. Thus, Champion is not entitled to indemnification from Clearview.

ATTORNEY'S FEES
Although both defendants are solidarily liable for the $6,000.00 judgment, we conclude the trial court erred in holding Clearview liable with the manufacturer for plaintiff's attorney's fees. There is simply no showing in the record of Clearview's bad faith or knowledge of the defects at the time of the sale. LSA-C.C. Art. 2545, supra, makes a seller liable for reasonable attorney's fees if he "knows of the vice of the thing he sells and omits to declare it." Although Champion as a manufacturer has a presumptive knowledge[6] of those manufacturing defects, there is no showing that Clearview knew of them and failed to declare them to Lehn. Accordingly, only Champion, not Clearview, can be held liable for the judgment of $1,000.00 for attorney's fees.

STORAGE FEES
We find no merit to Clearview's claim for entitlement to storage fees for storing the motor home on its lot after Lehn returned it on September 12, 1977. Although Clearview's service manager, Richard Brandhurst, testified that Clearview leases its business premises and hires a guard to watch over the vehicles in the lot, and that a vehicle occupying space there prevents the service department from working on another vehicle, the fact remains that Clearview's inability to repair the vehicle and remedy the defects ultimately caused Lehn to return it in exasperation and seek rescission. Under these circumstances, Clearview is not entitled to any set off against plaintiff for any storage costs incurred from September 12.
We are not persuaded to hold otherwise by Clearview's reliance on Robertson v. Jimmy Walker Chrysler-Plymouth, 368 So.2d 747 (La.App. 3rd Cir. 1979), writ denied, 371 So.2d 833 and 371 So.2d 834 (La. 1979), which allowed defendants a credit of $.08 per mile for each mile the defective vehicle had been driven by the plaintiff-purchaser. In Robertson, the purchaser clearly derived a benefit from use of the vehicle. In our case, however, Clearview's storage of the defective vehicle conferred no such benefit on Lehn and it would be unfair to require him to pay storage fees resulting from Clearview's failure to repair.

DECREE
Accordingly, that portion of the judgment casting Champion Home Builders Company and Clearview Dodge, in the sum of $1,000.00 for attorney's fees is reversed and set aside. Judgment is now rendered in favor of plaintiff in the sum of $1,000.00 for attorney's fees, but only against defendant, Champion Home Builders Company. In all other respects, the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] A judgment granting a "directed verdict" in favor of Chrysler was rendered at the conclusion of trial, dismissing the main and third party demands against Chrysler. This judgment of dismissal is final and Chrysler's liability is not before us on appeal.
[2] LSA-C.C. Art. 2531 provides:

"Art. 2531. Liability of seller in good faith for restitution of price.
Art. 2531. The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
[3] Although Champion initially filed a devolutive appeal from the judgment in favor of plaintiff, it subsequently paid plaintiff the full amount of the judgment, reserving all rights, including those of indemnity and contribution, against Clearview.
[4] According to Kitchens, Clearview called Champion on September 20, 1977 and obtained authorization for repair of the window shades for the rear door, damaged paneling in the bathroom and a rear-window seal. Champion's shipping order at this time indicates these parts and owner's papers for hot water heater and furnace were sent to Clearview.

In another shipping order dated October 7, 1977, Clearview ordered from Champion a gold lavatory and some touch up paint for paneling. Another shipping order of November 21 indicates Champion again shipped two pieces of bath paneling for Lehn's unit.
In December, Clearview called Champion again because it still had not received the paneling for the Lehn vehicle. The shipment was traced however, and found to have been delivered to the body shop at Clearview rather than the service department.
[5] LSA-C.C. Art. 2545 reads as follows:

"Art. 2545. Liability of seller for concealment of vice.
Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
[6] Marsh v. Winnebago Industries, Inc., 394 So.2d 670 (La.App. 4th Cir. 1981).