407 So.2d 777 (1981)
Keith BALL
v.
FORD MOTOR COMPANY and Richards Ford, Inc.
No. 14408.
Court of Appeal of Louisiana, First Circuit.
November 23, 1981.
*779 David M. Vaughn, John Dale Powers, Baton Rouge, for plaintiff-appellant, Keith Ball.
Joseph E. Juban, Baton Rouge, for defendant-appellant, Richards Ford, Inc.
A. S. Easterly, III, Baton Rouge, for defendant-appellee, Ford Motor Co.
Before CHIASSON, EDWARDS and LEAR, JJ.
EDWARDS, Judge.
This appeal involves a suit in redhibition for rescission of a sale of an automobile. The trial court ordered a reduction in the purchase price. We amend the trial court's judgment and affirm.

FACTS
On September 1, 1978, Keith Ball purchased a 1978 Ford Thunderbird from Carl Millett for $7,300.00. Millett had purchased the automobile new from Richards Ford about three months earlier. The automobile was equipped with a "T-top", which consisted of two removable glass panels in the roof. When Ball purchased the Thunderbird from Millett, it had been driven for approximately 4,100 miles.
On the day after purchasing the Thunderbird, Ball took it to a commercial car wash facility. At that time he noticed a small water leak in the area of the T-top. Ball brought the automobile to Richards Ford to have the leak repaired. When Richards returned the automobile to Ball the leak was a little worse. Despite repeated attempts, Richards Ford was unable to remedy the leak. Ball brought the car in at least ten times for repair, but the leak progressively worsened. Testimony presented at trial indicates that the T-top leaks so extensively that the automobile cannot reasonably be used in inclement weather because the occupants of the car become drenched.
On December 21, 1979, Ball filed suit against Richards Ford, Inc. and Ford Motor Company, seeking rescission of the sale of the automobile, damages, and attorney fees. Both Richards Ford and Ford Motor Company answered Ball's petition, denying the allegations made therein. Additionally, Richards Ford filed a third party demand against Ford, seeking indemnity from the manufacturer for any sum which Richards might be ordered to pay Ball. At the time of trial, the automobile had approximately 34,000 miles on it. Additionally, the automobile was involved in an accident the week before trial, resulting in estimated damage slightly in excess of $1,000.00.
*780 The trial judge concluded that reduction of the purchase price, rather than rescission of the sale, was the appropriate remedy. The court ordered a reduction in the purchase price of $3,000.00 and rendered judgment in favor of plaintiff against Richards Ford for that amount. All claims against Ford Motor Company were dismissed because the trial court was not satisfied from the evidence that Ford was responsibile for the severe leaking in the T-top. The court noted that the small leak should have been easily correctable but got much worse because Richards Ford was unable to repair it satisfactorily.
Richards Ford has suspensively appealed the judgment of the district court. Richards asserts that the trial court erred in allowing reduction in the purchase price because there was no proof of the existence of the defect at the time of the sale from Richards to Millett. Alternatively, Richards contends that the trial court erred in dismissing its third party demand against Ford for indemnity and in granting a reduction of price disproportionate to the actual loss of utility or inconvenience in the use of the automobile.
Ball answered this appeal contending that the appropriate remedy was rescission of the sale rather than reduction in the purchase price. Alternatively, Ball sought an increase in the amount of the reduction of price. Additionally, Ball took a devolutive appeal, asserting that the trial court erred in not holding Ford Motor Company responsible for rescission of the sale, return of the purchase price, damages and attorney fees.

DEFECT AT THE TIME OF SALE
A successful plaintiff in a redhibitory action must prove that there was a defect in the thing at the time of sale. LSA-C.C. art. 2530 provides as follows:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
Richards Ford and Ford Motor Company contend that plaintiff failed to prove the existence of a defect at the time of the sale from Richards Ford to Carl Millett. Millett testified at trial that the car never leaked in the three months that he owned it. Defendants assert that this establishes that there was no defect at the time of the sale by Richards.[1]
The existence of a redhibitory defect is a question of fact and the trial judge's conclusion should not be disturbed in the absence of manifest error. Clinkscales v. Superior PontiacGMC, Inc., 365 So.2d 895 (La.App. 4th Cir. 1978). The trial judge's factual finding that the defect existed at the time of the sale from Richards Ford to Millett is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The leak appeared in the T-top slightly more than three months after the original sale. If a defect appears soon after the thing is put into use a reasonable inference arises that the defect existed at the time of the sale. Rey v. Cuccia, 298 So.2d 840 (La.1974); Moran v. Willard E. Robertson Corporation, 372 So.2d 758 (La.App. 4th Cir. 1979). It is significant to note that the testimony at trial revealed that Millett had never taken the automobile to a commercial carwash, yet it was in such a place that Ball first noticed the leak in the T-top. Our review of the record reveals that the trial court's finding of the existence of a defect at the time of sale is not manifestly erroneous.

*781 RESCISSION OR REDUCTION IN THE PRICE?
Ball maintains that the trial court erred in ordering a reduction in the purchase price rather than a rescission of the sale. He relies on LSA-C.C. art. 2520, which provides as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Ball contends that rescission is required here because he has demonstrated that the T-top leaks so much that it must be supposed he would not have purchased the automobile had he known of the vice.
LSA-C.C. art. 2543 provides in pertinent part as follows:
"But in a redhibitory suit, the judge may decree merely a reduction of the price."
A trial court is vested with the discretion to award a reduction in the purchase price rather than rescind the sale in a suit based on redhibition. See Moran v. Willard E. Robertson Corporation, supra; Savoie v. Don Siebarth Pontiac, Inc., 345 So.2d 210 (La.App. 3rd Cir. 1977).
No showing has been made that the trial court abused its discretion in awarding a reduction in the price instead of rescinding the sale. As the trial judge noted, the leak was initially small but progressively grew worse. Furthermore, the record reveals that Ball had derived substantial use from the Thunderbird, having driven it for approximately 30,000 miles. These factors support the trial court's conclusion that reduction in the purchase price was the appropriate remedy.[2]

AMOUNT OF REDUCTION
Both Richards Ford and Keith Ball contend that the trial court erred in fixing the amount of the reduction in price. Richards asserts that the ordered reduction is too high, while Ball maintains that it is too low.
The diminution in price which the trial court may decree under LSA-C.C. art. 2541 et seq. is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defect. Lacey v. Baywood Truck & Machinery, 381 So.2d 863 (La.App. 1st Cir. 1980); Muller v. A. K. Durnin Chrysler-Plymouth, Inc., 361 So.2d 1257 (La.App. 1st Cir. 1978); Guillory v. Pitre Ford Co., 345 So.2d 1274 (La.App. 3rd Cir. 1977); Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir. 1974). Menville held that factors to be considered in calculating the reduction in price, in addition to the cost of repairs, include "the numerous problems, the frequent inconvenience associated with breakdowns and repairs of these problems, and the overall poor performance in relation to that expected." See also, Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4th Cir. 1981).
The trial court ordered a reduction in the purchase price of $3,000.00. It stated that this considerable reduction was necessary because the automobile had a major problem, rendering it unusable in inclement weather. The record amply reflects the numerous times that Ball brought the car in for repairs and the inconvenience associated therewith. It also shows the expectations which plaintiff had when he purchased a Ford Thunderbird and the numerous problems caused by the leaking T-top. Neither Richards nor Ball have demonstrated that the trial court abused its discretion in setting the amount of the reduction in price. In the absence of any such showing, that *782 portion of the trial court's judgment is affirmed.

FORD MOTOR COMPANY'S LIABILITY TO BALL
The trial court dismissed all claims against Ford Motor Company because of its conclusion that Ford was not responsible for the severity which the leaking problem had attained. The court stated that the original small leak should have been easily correctable and got worse only because Richards Ford was unable to repair the Thunderbird satisfactorily. Ball's appeal maintains that Ford Motor Company should also be liable to him.
We conclude that the trial court erred in dismissing all claims against Ford Motor Company. This case does not involve a situation where the dealer's failure to repair is its fault alone. Ford assumed an active role in the attempts to repair Keith Ball's Thunderbird and should also be responsible for the failure of those attempts.
The record reveals that Ford Motor Company was directly involved in the attempted repair process. The Richards Ford repairmen testified at trial that their work on the T-top followed the procedures recommended in service manuals and technical service bulletins distributed by Ford Motor Company. After its initial inability to repair the water leak, Richards Ford requested assistance from Ford Motor Company. Additionally, Keith Ball made a formal complaint to Ford about Richards' inability to fix the leak. Ball's complaint triggered the involvement of R. M. Gowland, Ford's zone service representative. Gowland inspected the work done by Richards' employees and certified that it was performed in accordance with the instructions in the Ford technical service bulletins and service manual. Furthermore, Gowland requested technical assistance from the Ford design engineer who designed the T-top, but never received any response.
The trial court's conclusion that Ford is not responsible for the severity of the leak as it now exists is clearly wrong. Arceneaux v. Domingue, supra; Canter v. Koehring Company, supra. The repairs were conducted in accordance with procedures prescribed by Ford. Ford Motor Company personnel inspected the work and approved it as being in conformity with these procedures. Richard's failure to repair the water leak in Ball's automobile is a failure for which Ford should also be responsible. The judgment of the trial court is amended to make Ford solidarily liable along with Richards to Ball for the $3,000.00 reduction in the purchase price.
Furthermore, Ball is entitled to recover attorney fees from Ford. LSA-C.C. art. 2545 provides as follows:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."
Attorney fees are awardable when the trial court orders a reduction in price rather than rescission of the sale. A seller is liable for attorney fees only if he has knowledge of the vice of the thing he sells.
A manufacturer is presumed to know of the defects in the thing that he sells. Rey v. Cuccia, 298 So.2d 840 (La. 1974); Marsh v. Winnebago Industries, Inc., 394 So.2d 670 (La.App. 4th Cir. 1981); Muller v. A. K. Durnin Chrysler-Plymouth, Inc., 361 So.2d 1257 (La.App. 1st Cir. 1978); Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1st Cir. 1977). Ford, as manufacturer of the Thunderbird, is presumed to have had knowledge of the defect and is liable for attorney fees.
The record contains a time sheet submitted into evidence by plaintiff's attorney. On the basis of that time sheet, and the record, which reveals the complexity of the legal issues, the amount of preparation required, and the degree of expertise shown by plaintiff's counsel, Ford is ordered to pay the plaintiff, Keith Ball, $1,000.00 in attorney fees. Richards Ford is not liable to Ball for attorney fees because no showing was made that it had knowledge of the defect and the presumption applied to Ford *783 is inapplicable to Richards, a non-manufacturer.

FORD MOTOR COMPANY'S LIABILITY TO RICHARDS FORD
LSA-C.C. art. 2531 provides in pertinent part as follows:
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
As noted above, the trial court dismissed Richards' claim against Ford on the ground that Ford was not responsible for the severe water leak which has come to exist in Ball's Thunderbird. Ford argues in support of this conclusion. Ford maintains that a manufacturer should not be liable to a seller under article 2531 when the defect is due to the seller's inability to repair.
This case does not present an instance where the seller refuses to repair the thing or does so in a substandard manner. See, e. g. Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4th Cir. 1981). Richards Ford made numerous good faith attempts to repair the water leak. The evidence indicates that Richards' repair work was performed to Ford's specifications and was inspected and approved by Ford's zone service manager. Clearly, Richards is entitled, under the provisions of LSA-C.C. art. 2531, to reimbursement from Ford for any losses sustained by it. Judgment is rendered in favor of Richards Ford and against Ford Motor Company for any sum of money which Richards pays to Keith Ball as a result of the judgment rendered against it.[3]
For the foregoing reasons, the judgment of the district court is amended and affirmed.
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Keith Ball, and against defendants, Richards Ford, Inc. and Ford Motor Company, in solido, in the sum of Three Thousand and no/100 Dollars ($3,000.00) together with interest thereon from date of judicial demand until paid.
It is further ordered that there be judgment in favor of plaintiff, Keith Ball, and against defendant, Ford Motor Company, for attorney fees in the amount of One Thousand and no/100 Dollars ($1,000.00) together with interest thereon from date of judicial demand until paid.
It is further ordered that there be judgment in favor of third party plaintiff, Richards Ford, Inc., and against third party defendant, Ford Motor Company, for any and all sums which Richards Ford shall pay to plaintiff, Keith Ball, in satisfaction of the judgment rendered herein.
It is further ordered that defendant, Ford Motor Company, pay all costs of these proceedings, both at trial and on appeal.
AMENDED AND AFFIRMED.
NOTES
[1] Counsel for plaintiff attempts to rely on the presumption of LSA-C.C. art. 2530. He maintains that since the leak manifested itself within three days of the sale from Millett to Ball, it must be presumed to have existed at the time of sale. This argument would have been correct if the sale which plaintiff was seeking to rescind was the sale made by Millett. However, plaintiff seeks to rescind the sale made by Richards, which occurred three months before the leak appeared. Plaintiff's argument that the presumption of article 2530 applies is, therefore, totally devoid of any merit.
[2] The trial judge also stated that reduction in the price, rather than rescission, was appropriate because the wreck in which the automobile was involved made it impossible to return the parties to their previous position. This reason alone would not be sufficient to preclude rescission of the sale. The damage to the automobile was relatively minor and the evidence established the cost of repair. Rescission of the sale could have been achieved by deducting the cost of repairs from the amount of the purchase price.
[3] On appeal, Richards has not sought attorney fees from Ford, but has limited its claims to reimbursement for any sum which it may owe Ball. Even if attorney fees had been requested, we would be unable to award them because Richards failed to introduce any evidence as to the amount of work performed by its attorney.