LOTTINGER, Judge.
In this appeal by defendant, Coleman Oldsmobile, Inc., from the trial court judgment ordering a complete rescission of the *1050 sale, defendant assigns the following specifications of error:
I.The trial court erred in its finding that a redhibitory defect existed in the vehicle at the time of the sale to the plaintiffs-appellees.
II.The trial court erred in failing to find that the existence of any problem in the heads was an apparent defect, or one which had been disclosed to the plaintiffs-appellees.
III. The trial court erred in failing to consider the limitation of warranty provisions contained in the Act of Sale which were explained to the plaintiffs-appellees.
IV. The trial court erred in failing to find that the seller should be given an opportunity to repair the vehicle and that it was in fact repaired.
V.The trial court erred in ordering a complete rescission of the sale, inasmuch as the minor nature of the problem in the vehicle would warrant only a reduction of the price.
The trial judge’s written reasons, a copy of which is appended hereto, adequately set forth the facts of this case.
I
The trial judge concluded that the cracked engine heads existed at the time of the sale. In arriving at this factual conclusion, the trial judge apparently disbelieved the response of Robert Neal, a mechanic at Coleman Oldsmobile, to a test performed on the engine heads, when all Neal did as a result thereof was replace the head gaskets. The results of the test were excluded as hearsay. The trial judge had the opportunity to view the witness vis-a-vis a reading of a cold record, and given the great discretion a trial judge has in fact finding, we cannot say he is clearly wrong.
II
Mere knowledge that there is a water leak with subsequent information that the head gaskets had to be changed does not create in the buyer knowledge of an apparent defect with the engine heads.
III
The limitation of warranty provision appear in the act of sale, to wit:
“LIMITED WARRANTY
“This car has 30 days 50-50 warranty on transmission, engine, and differential, work to be done in our shop or 1,000 miles whichever comes first,”
is not sufficient to put a buyer on notice that he has either waived or limited his rights under La.Civ.C. art. 2520, et seq.
IV AND V
We are convinced that the trial judge was in error in declaring an avoidance of the sale rather than a reduction of the price. La.Civ.C. art. 2543. It is not apparent from the evidence in this record that plaintiffs would have refused to purchase this vehicle if they would have been originally informed that there were cracked engine heads, but same would be replaced. In fact plaintiffs’ own independent mechanic stated that once the heads would be changed, there should be no further problems.
The plaintiffs purchased a used vehicle with 18,483 miles on it. Though redhibition also applies to used vehicles, it is not unreasonable for a purchaser to expect some problems subsequent to the purchase. Thus we conclude that the defects and inconveniences were not sufficient to void the sale. The-sale price will be reduced by the bills from Woodway Gulf of Houston, Texas for $100.75 for radiator repairs and the Polk Chevrolet bill of $855.01. Inasmuch as plaintiffs took the vehicle to Adams Repair *1051 Works, Inc. without first giving Coleman an opportunity to repair, we cannot allow a reduction for this amount.
Therefore, for the above and foregoing reasons, the judgment of the trial court is amended and there is now judgment in favor of plaintiffs, Fred Hill and Betty Hill, against the defendant, Coleman Oldsmobile, Inc. in the full and true sum of $955.76 with legal interest from date of judicial demand until paid, and for all costs both in the trial court and in this court.
AMENDED AND AFFIRMED.
APPENDIX
[[Image here]]
WRITTEN REASONS FOR JUDGMENT
Fred Hill and Betty Hill filed this redhi-bitory action to rescind the sale of a 1979 Chevrolet pickup truck purchased from Coleman Oldsmobile, Inc. and manufactured by General Motors Corporation.
On Saturday, May 31, 1980, petitioners saw a black 1979 Chevrolet Silverado diesel pickup on the used car lot of Coleman Oldsmobile. Petitioners inquired of J. Bill Bullock, a salesman at Coleman Oldsmobile, Inc., about the pickup. After test driving the pickup, the petitioners decided to buy it. Mr. Hill left for work, leaving Mrs. Hill to sign the necessary documents. The purchase price was $7,500.00 with $360.00 for taxes and $15.00 for registration for a total price of $7,875.00. Petitioners traded a vehicle in for which they were allowed $1,500.00, leaving a balance of $6,375.00.
Mr. Hill testified that after test driving the pickup on Saturday, May 31, 1980, the salesman, Mr. Bullock, informed him that it appeared that water was leaking under the vehicle which needed to be checked. Monday, June 2,1980, was given as the delivery date of the pickup.
Robert Neal, a mechanic at Coleman Oldsmobile, testified that when the pickup was brought to him for repair, he was informed that it leaked water. Mr. Neal stated that he fixed a water hose, replaced the water pump and thermostat. He also noticed that there was a burned head gasket. The heads were sent to another concern to ascertain if the heads were cracked. No testimony was given as to this test. Mr. Neal placed a new head gasket on the pickup.
Mr. Hill testified that Mr. Bullock phoned him Monday, June 2,1980, informing him of the need of a head gasket and that delivery would be after the head gasket was replaced. The vehicle was subsequently delivered.
*1052 Approximately three weeks after the purchase, Mr. Hill noticed the temperature gauge rising. Upon checking he found the water level low. Water was added. Approximately three weeks later, the temperature gauge registered hot. The water was low and more was added.
Mr. Hill made two trips to Houston in the pickup. On the later trip the vehicle registered hot and the radiator was repaired at a cost of $100.75 (see Exhibit P-2).
Due to the frequency of running hot, Mr. Hill took the pickup to Adams Repair Works, Inc. on September 9, 1980, to have the vehicle repaired. Mr. J.C. Kelly, owner of Adams Repair Works, Inc., testified he removed the heads and after being magna flushed, it was discovered that the heads were cracked, which would be the source of causing the vehicle to overheat. Due to the cost of repair, Mr. Hill informed Mr. Kelly to reassemble the vehicle. The bill of Adams Repair Works, Inc. was $514.05 (Exhibit P-3).
Mr. Hill contacted Coleman Oldsmobile, Inc. concerning the cracked heads and was referred to a General Motors truck distributor, Polk Chevrolet. Mr. Hill contacted General Motors’ representatives about the cracked heads (Exhibits P-5, P-6, P-7) and was basically advised to take the vehicle to Polk Chevrolet for examination. Polk charged $855.81 and refused to release the pickup until its charge was paid. The truck remains at Polk Chevrolet. No one from Polk Chevrolet testified as to its findings, however, Mr. Hill testified that Polk Chevrolet told him they fixed a heater core and the truck was ready.
This Court finds that the pickup was overheating due to cracked heads. Were these heads cracked when sold by Coleman Oldsmobile, Inc.? Mr. Neal testified that the cracked head gasket he found would cause the pickup to run hot. Since Coleman Oldsmobile had just obtained the truck as a trade-in, it must have been overheating for the prior owner. Mr. Neal stated the test he performed in finding the cracked head gasket would also be the same test to determine if the heads were cracked. He was concerned enough about the heads that he sent them to be tested.
This Court believes that Mr. Kelly’s examination revealed cracked heads which were present when the pickup was sold to petitioners by Coleman Oldsmobile. Mr. Josephson, customer service representative for General Motors, in his letter of November 5, 1980, states:
“Also, diesel heads do occasionally crack between valve seats but in no way hinders the operation and performance of the engine.”
Mr. Neal disagreed with this statement.
Civil Code Article 2520 provides:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
To prevail in an action for redhibition, the purchaser must establish that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that the purchaser would not have made the purchase had he known of the defects. He must also prove that the defects existed at the time of the purchase, but were neither known nor apparent to him, and that the seller could not, or would not, correct the defects when given the opportunity to do so. Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980).
Although the cracked heads existed at the time of the sale, Mr. Hill did not know of such nor were the defects apparent to him. It was only after the purchase of the vehicle that he was informed of a cracked head gasket. The water leak mentioned by the salesman would not constitute suffi *1053 cient notice to Mr. Hill of any defect in the heads.
This Court finds that the sale should be rescinded.
When a seller is in good faith, he must be given an opportunity to repair the thing before a redhibitory action can be brought. Civil Code Article 2531. This article further provides that if the seller is unable or fails to repair, remedy or correct the vice, then he must restore the purchase price and reimburse the reasonable expenses occasioned by the sale.
Under this article the purchaser is not entitled to attorney fees from the good faith seller. Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4th Cir.1981).
The pickup had 18,483 miles on the date petitioners purchased it and 24,078 miles when left at Polk Chevrolet, Inc., resulting in petitioners operating it 5,595 miles. Under Article 2531 the good faith seller is entitled to a credit for this use which the Court fixes at $839.25, representing an allowance of 15$ per mile. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La. App. 1st Cir.1980).
Petitioners financed the pickup with General Motors Acceptance Corporation (Exhibit P-12). Petitioners are entitled to recover the value of their trade-in, $1,500.00; the cash price of the vehicle, $6,360.00; $334.30 for credit life; $15.00 for recordation, title and license and finance charges of $2,843.18, making a total of $11,052.48.
Petitioners testified to and submitted bills from Woodway Gulf of Houston, Texas, for $100.75 and Adams Repair Works, Inc. for $514.05 for which he is entitled to recover. The Court will not allow recovery of the Polk Chevrolet bill of $855.01.
Therefore, petitioners are entitled to a judgment of $11,667.28, less the credit of $839.25 and less the amounts petitioners are entitled to from the cancellation of the credit life insurance and the prepayment of the loan. Further, petitioners are to surrender the pickup to Coleman free and clear of any liens and mortgages, including any claim that Polk Chevrolet might have.
Judgment will be signed accordingly.
Baton Rouge, Louisiana, this 8th day of December, 1981.
/s/ William H. Brown
JUDGE